[No. 4,308.]

# HANCOCK M. JOHNSTON, MARY JOHNSTON, HIS WIFE, AND FREDERICK EATON, A MINOR, *v.* C. W. BUSH ET AL.

HOMESTEAD, UNDER THE ACT OF 1851.—The dedication of land as a homestead, under the Homestead Act of April 21, 1851, did not constitute the husband and wife joint-tenants, with the right of survivorship.

IDEM.—If the premises were the separate property of either husband or wife, or the common property of both, before they became such homestead, they remained such separate or common property afterward.

TERMINATION OF HOMESTEAD BY DEATH OF WIFE.—If a homestead, dedicated on common property under the Act of 1851, terminated in 1869, by the death of the wife, her interest in the property immediately vested in her children, who became tenants in common with their father.

IDEM.—If such homestead claim survived to the husband, as the head of the family, the children were not thereby deprived of their interest in the property which they inherited from their mother, but they held such interest subject to the homestead claim of the father, and when that claim is abandoned by him, or ceases to exist, they are entitled to the immediate possession of their undivided interest in the property.

INHERITANCE OF CHILDREN IN HOMESTEAD:—If a husband and wife had dedicated a homestead on common property, under the Act of 1851, and the wife died in 1859, and the husband married a second time, and declared a homestead under the Act of 1860, the children of the first marriage were not, by this declaration of homestead, deprived of the interest in the homestead property which they inherited on the death of their mother.

ABANDONMENT OF HOMESTEAD.—If a husband, who, as head of a family, is entitled to the homestead dedicated under the Act of 1851 by him and his wife prior to her death, removes from the same and conveys it by deed absolute, these acts amounted to an abandonment of the homestead claim.

Ejectment to recover the undivided one half of a small tract of land in the City of Los Angeles. The demanded premises became the common property of B. S. Eaton and his wife in 1854. They dedicated it as a homestead under the Act of 1851. The wife died in 1859, leaving, issue of the marriage, two children, Mary and Frederick, two of the plaintiffs. Mary afterwards became the wife of the plaintiff Hancock. The surviving husband and children continued to reside on the premises, and he, in 1860, married a second time, and, on the 27th of April, 1861, he filed a homestead declaration under the Act of 1860. On the 9th of Febru-

ary, 1867, said B. S. Eaton and his wife executed a warranty deed of the premises to the defendant Bush. The other defendants were the tenants of Bush. The defendants recovered judgment, and the plaintiffs appealed. The other facts are stated in the opinion.

*Glassell, Chapman & Smiths,* for the Appellants.

The status of the property at the time of Mrs. Eaton's death must be determined from the laws then in force, for then the rights of her children vested, and they cannot be affected by any subsequent legislation. (*Rich* v. *Tubbs,* 41 Cal. 34.)

We are therefore confined in the investigation of this question to Section 15, Art. 11, of the Constitution, and the Homestead Act as passed April 28th, 1851, there having been no amendments thereto until 1860, after Mrs. Eaton's death, and to the decisions of our Supreme Court thereunder. The land in question was common property.

This Court, in the case of *Gee* v. *Moore* (14 Cal. 474), construing the Act of April 28th, 1850, uses the following language:

"It not only exempts the homestead from forced sale, but declares that no mortgage, sale or other alienation of any kind, by the owner, if a married man, shall be valid without the signature of the wife if she be a resident of the State."

"The power of alienation, and not the nature of the estate, is thus affected.

" If the premises are the separate property of the husband, or the common property of both husband and wife before they become a homestead, they remain such separate or common property afterwards."

This decision of *Gee* v. *Moore* has been repeatedly affirmed and especially in *Bowman* v. *Norton,* 16 Cal. 213; *Himmelman* v. *Schmidt,* 23 Id. 117; *Brannan* v. *Wallace,* 25 Id. 114; *McQuade* v. *Whaley,* 31 Id. 531.

It expressly overrules all the previous cases which had decided to the contrary, and has been followed in all subsequent decisions construing the Act of 1851.

The land in question being common property, and the nature of the estate not having been changed by its subsequent dedication as a homestead, upon the death of the first Mrs. Eaton one half thereof vested absolutely in her children. (Act of April 17th, 1850, defining rights of husband and wife, Section 11; *Broad* v. *Broad*, 40 Cal. 493; *Broad* v. *Murray*, 44 Cal. 228.)

*McConnell & Judge*, for the Respondents.

Up to the time of Mrs. Eaton's death the property was possessed of all the attributes of a homestead. The question then, is, what effect did her death have on the homestead status?

Answer: Eaton still had a family, of which he was a head. A widower, if the head of a family, is as competent to have a homestead as a married man. (Act of April, 1853; Hittell, Art. 3,541.) The words of the Act are, "the husband or wife, or other head of the family."

In April, 1861, Eaton filed his declaration of homestead in accordance with the provisions of the amended Act of April 28, 1860. (Hittell, Art. 3,541, 3,547 note, d.)

The effect of this was, by a sort of relation, or reflex action, to continue in being the original homestead right, until abandoned in the manner prescribed by the same amended Act. (*Riley* v. *Peght*, 23 Cal. 74.)

Upon his second marriage, the homestead originally acquired, continued to be the homestead of himself and second wife, otherwise the second wife would be absolutely shut off from the benefits of the Act, unless upon condition of her husband changing his residence. But this, the law does not require or contemplate. On the contrary, it contemplates that a homestead once acquired shall remain a homestead through all the changes and vicissitudes arising from death and second nuptials. The premises were the homestead of Eaton and his second wife. If this be granted, the result is obvious, since the statute expressly gives to them the power of alienation. (Homestead Act, Sec. 2; Hittell, Art. 3,542.)

By the Court, CROCKETT, J.:

The land in controversy was the common property of Eaton and his first wife, and was occupied by them as a homestead until her death in 1859. The dedication of the land as a homestead under the Homestead Act of April 21, 1851, did not constitute the husband and wife joint tenants with a right of survivorship, nor change the nature of their prior estate in the land; and had no other effect than to exempt it from alienation, so long as the homestead claim was impressed upon it, except by the joint deed of the two spouses. (*Gee* v. *Moore*, 14 Cal. 474; *Bowman* v. *Norton*, 16 Id. 231; *Himmelman* v. *Schmidt*, 23 Id. 117; *Brannan* v. *Wallace*, 25 Id. 114; *McQuade* v. *Whaley*, 31 Id. 531.) In the case first cited the Court says: "The power of alienation, and not the nature of the estate, is thus affected. * * If the premises are the separate property of the husband, or the common property of both husband and wife before they become a homestead, they remain such separate or common property afterwards." It is clear, therefore, that if the homestead claim was terminated by the death of the wife, her interest in the property immediately vested in her children, who became tenants in common with their father, and were entitled to be let into possession with him. (*Broad* v. *Broad*, 40 Cal. 493; *Broad* v. *Murray*, 44 Id. 228.) On the other hand, if the homestead claim survived to the husband as the head of the family (a point we do not decide), nevertheless the children were not thereby deprived of the interest in the common property, which they had inherited from their mother, and which they held, subject only to the homestead claim of their father. When the claim was abandoned, or for any other reason ceased to exist, the right of the children became absolute, and entitled them to the immediate possession of their undivided interest in the property. If it be conceded, therefore, that Eaton, after the death of his wife, was entitled to occupy the land as a homestead, he held it as such, subject to the rights of his children as the owners of an undivided half of the property, and whose right to be let into the possession would become

absolute on the termination of the homestead claim. In 1865 Eaton removed from these premises, and in 1867 conveyed them to the defendant by deed absolute. This was clearly an abandonment of the homestead, and the plaintiffs, who are the children of the deceased, Mrs. Eaton, became entitled to enter. We attach no importance to the fact that in 1861, after his second marriage, Eaton filed a declaration of homestead, including these premises, under the homestead Act of 1860. He could not deprive his children of their estate by an attempt to dedicate the property as a homestead for himself and his second wife under the new law, which establishes a sort of joint-tenancy in the homestead, with a right of survivorship, between the husband and wife. The counsel for the defendant contends that the effect of filing the declaration of homestead was, " by a sort of relation or reflex action, to continue in being the original homestead right." But we know of no principle of law by which a person can be deprived of his estate, already fully vested, by means of any species of "relation or reflex action."

Judgment and order reversed, and cause remanded for a new trial.

Mr. Justice McKINSTRY did not express an opinion.