[L. A. No. 9131.   In Bank.—September 2, 1926.]

## FRANCES LEE STEWART, Respondent, v. ERNEST A. STEWART, Appellant.

[1] HUSBAND AND WIFE—COMMUNITY PROPERTY—INTEREST OF WIFE. The contention that the changes in the laws relating to community property effectuated by the last amendment to section 172 of the Civil Code and the addition of section 172a of said code made in 1917 were such as to create in the wife, if such had not theretofore existed, a vested interest in an undivided one-half of the community property immediately upon the acquisition of such property by the spouses, or either of them, and to continue thereafter during the existence of the marriage relation, cannot be maintained; nor did the legislature by said amendments show any intent to work such a radical change in the former and long-established status as to render the interest of the wife in the community property thereafter to be acquired a present vested estate and interest therein from the date of its acquisition.

[2] ID. — AMENDMENT TO COMMUNITY PROPERTY LAW — INTENT OF LEGISLATURE.—All that the legislature, by the last amendment to section 172 of the Civil Code and the addition of section 172a of said code, did, or attempted to do, was to cast about the interest of the wife in both the real and personal property of the community during the continued existence of the marriage relation added safeguards and protection against the fraudulent or inconsiderate acts of the husband in the exercise of his control and dominion over these properties of the nature of those already provided for in earlier statutes and especially in and by the 1891 amendment of section 172 of the Civil Code.

[3] ID. — RIGHTS IN COMMUNITY PROPERTY — BY WHAT LAW DETERMINED.—The interest of the husband and wife in community property, in so far as those rights do or do not amount to vested interests therein, must be determined by the state law at the date of the acquisition of said property.

[4] ID.—INTEREST OF WIFE—NATURE OF.—The interest of the wife, as shown by a long line of past decisions, in the property of the community during the continuance of the marriage relation, while it has not reached the status of a vested interest, is and has always been a more definite and present interest than that of

1.   See 5 Cal. Jur. 278.

3.   See 5 Cal. Jur. 342; 5 R. C. L. 827.

4.   Interest of wife in community property, note, 126 **Am. St. Rep.** 100.   See, also, 5 Cal. Jur. 331; 5 R. C. L. 851.

an ordinary heir, and she has by virtue of her contribution toward its acquisition and conservation rights which have always been safeguarded against the fraudulent or inconsiderate acts of the husband and for the assertion and safeguarding of which she has been given access to appropriate judicial remedies both before and after the time when her rights and interests would ripen and become vested through the death of the husband or the severance of the marriage relation whenever such rights and ultimate interests were affected by or threatened with such forms of invasion.

(1) 31 **C. J.**, p. 79, n. 28, 29, p. 80, n. 30.   (2) 12 **C. J.**, p. 885, n. 14 New; 15 **C. J.**, p. 949, n. 46, 49; 31 **C. J.**, p. 79, n. 29; 36 **Cyc.**, p. 1157, n. 93.   (3) 31 **C. J.**, p. 81, n. 52 New.   (4) 31 **C. J.**, p. 80, n. 30 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Reversed.

The facts are stated in the opinion of the court.

Ernest A. Stewart *in pro. per.* for Appellant.

Ida May Adams for Respondent.

Burrel D. Neighbours and F. A. Jeffers, *Amici Curiae,* for Appellant.

Ingle Carpenter, Chas. W. Fourl, Devlin & Devlin, Robbins, Elkins & Van Fleet, Dunne, Dunne & Cook, John W. Preston and Allen G. Wright, *Amici Curiae,* for Respondent.

RICHARDS, J.—This appeal is from a judgment of the superior court in and for the county of Los Angeles in the plaintiff's favor and in an action brought by her against the defendant, her husband, to quiet her title to the piece of real property described in her complaint; and to determine the rights of the parties to the action thereto and declare the same under the provisions of section 1060 of the Code of Civil Procedure. In her complaint the plaintiff alleged that the parties to said action had intermarried in the city of Los Angeles, state of California, on the nineteenth day of June, 1907, and that they had ever since been husband and wife; that neither of said parties had at the time of their said

marriage any separate property; that ever since April 27, 1918, said plaintiff has been in possession of that certain piece of real estate described in her complaint under and by virtue of a deed of the same to her, which deed is attached as an exhibit to her complaint; that said property was wholly paid for from community funds of the parties hereto while living together as husband and wife and acquired by them since July 27, 1917. The plaintiff further alleged that she claims ownership of and title to "an undivided one-half valid present vested interest" in and to the said community property; that the defendant denies that said plaintiff has or had ownership of or title to an undivided one-half or any valid or vested or present interest in said property and claims adversely to plaintiff that said property belongs wholly and entirely to the defendant and that by virtue of the community property laws of California said defendant is invested with the sole ownership of said property. Wherefore the plaintiff prays that the defendant be required to set forth the nature of his adverse claim and that the same may be determined by said court; and that it be declared and adjudged that the plaintiff is the owner in fee simple of an undivided one-half valid present vested interest in and to said property and for such other and further relief as to the court may seem just and equitable. The defendant answered admitting in the main the allegations of said complaint, with the exception of those wherein the plaintiff asserted that she has or is entitled to any valid or present or vested interest in said property; and in that behalf alleged that the defendant has and is entitled to the ownership of and title to the whole of said property, and that whatever interest the plaintiff has therein is a mere expectancy and is not property nor any vested right therein entitled to legal protection, at least until such time as the community is dissolved by death or divorce. Wherefore he prays that the plaintiff take nothing by her action. The cause went to trial upon such issues as were thus made up and upon its submission the trial court rendered and entered its judgment in the plaintiff's favor, based upon findings embodied therein in substantial accord with the averments of the plaintiff's complaint, to the effect that the plaintiff's title to an undivided one-half interest in the said property be quieted as against said defendant and the said plaintiff be decreed to be

the owner of "an undivided one-half valid present vested interest" in and to the said property. From such judgment the defendant has taken this appeal.

Since the taking and presentation of this appeal to this court for decision numerous *amici curiae* have appeared, represented by able counsel in support of and in opposition to the claims asserted by the said plaintiff upon which said judgment is predicated; and it is the vigor with which these *amici curiae* have supported their respective contentions by argument and by briefs which has prevailed upon the court to indulge at this time in a general review of the subject of community property under the laws of California as interpreted by the past decisions of this court and as affected by comparatively recent legislation.

The constitution of California adopted in 1849 contained the following provision:

"Sec. 14. All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property, and laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as to that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property." (Const. of 1849, art. XI, sec. 14.)

The said constitution also contained in the schedule thereto the following provision:

"All rights, prosecutions, claims, and contracts, as well as of individuals as of bodies corporate, and all laws in force at the time of the adoption of this constitution and not inconsistent therewith, until altered or repealed by the legislature, shall continue as if the same had not been adopted." (Schedule, sec. 1.)

It may be assumed that in the adoption of these provisions of that early constitution the framers thereof had in mind the provisions and stipulations of the treaty of Guadalupe Hidalgo, which had been entered into in the month of February of the previous year between the governments of the United States and Mexico, by virtue of which the territory which embraced the present state of California had been ceded to the former, and which contained certain provisions intended for the protection of private property rights

owned by Mexicans within the territory thus ceded at the time the treaty was made. It may also be assumed that the members of the first legislature of the state of California organized presently under the provisions of said constitution had the like provisions of said treaty in mind in the formulation of those laws which said legislature proceeded to adopt in obedience to the mandate of said organic law; for while said legislature during the course of its session adopted an act providing that "The common law of England, so far as it is not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state, is the rule of decision in all the courts of this state" (Stats. 1850, p. 219), it also a few days later enacted a statute entitled "An act defining the rights of husband and wife." (Stats. 1850, p. 254.) Section 1 of said act provided that "All property, both real and personal, of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, shall be her separate property; and all property, both real and personal, owned by the husband before marriage, and that acquired by him afterwards, by gift, bequest, devise, or descent, shall be his separate property." Section 2 of said act provided that "All property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be common property." Section 6 of said act provided that "The husband shall have the management and control of the separate property of the wife during the continuance of the marriage." Section 9 of said act provided that "The husband shall have the entire management and control of the common property, with the like absolute power of disposition as of his own separate estate. The rents and profits of the separate property of either husband or wife shall be deemed common property." Section 10 of said act provided that "No estate shall be allowed to the husband as tenant by courtesy upon the decease of his wife, nor any estate in dower be allowed to the wife upon the decease of her husband." Section 11 of said act provided: "Upon dissolution of the community by the death of either husband or wife, one-half of the common property shall go to the survivor, and the other half to the descendants of the deceased husband or wife, subject to the payment of the debts of the deceased. If there be no

descendants of the deceased husband or wife, the whole shall
go to the survivor, subject to such payment." Section 12
of said act provided: "In case of the dissolution of the mar-
riage, by the decree of any court of competent jurisdiction,
the common property shall be equally divided between the
parties, and the court granting the decree shall make such
order for the division of the common property, or the sale
and equal distribution of the proceeds thereof, as the nature
of the case may require." The first judicial reference to the
foregoing provisions of this act occurs in the case of *Panaud*
v. *Jones,* 1 Cal. 488. In that case the plaintiff was guardian
*ad litem* of certain minor children of Anastasio Alviso and
his wife. Alviso died a widower in 1846, his wife having
predeceased him several years before. On the eve of his
death Alviso made a will purporting to dispose of certain
property which had been acquired by himself and his wife
during marriage by purchase or through their labor and
industry. This class of property was known to the Spanish
and Mexican law as Gananciales, which corresponds to our
term "community property." By his will Alviso undertook to
direct his executor to sell the whole of said property and
devote the proceeds thereof to the payment of certain debts
contracted during his marriage. It was the contention of
the guardian *ad litem* of the said minors that under the
Spanish and Mexican laws the interest of the wife during
the lifetime of her husband and herself in the Gananciales
was such a definite and vested interest that upon her death
it passed by succession to these her heirs and that the power
of her surviving husband to dispose of the interest of his
deceased wife in such property was terminated by her de-
cease. The learned writer of the opinion in that case
referred to and quoted at length from the provisions of the
said act of 1850, declaring the same to be founded in the
main upon and to be a correct exposition of the Spanish
and Mexican laws defining the rights of husband and wife
in the Gananciales during marriage, but pointed out that
as to section 11 of said act it made a wide departure there-
from by providing that "Upon the dissolution of the com-
munity property by the death of either husband or wife,
one-half of the community property shall go to the survivor
and the other half to the descendants of the deceased hus-
band or wife." The opinion refers to the said act of 1850

as, with the exception above stated, containing a clear and
succinct statement of the Spanish law respecting the com-
munity property of husband and wife. It then proceeds
to show that under the Spanish and Mexican law quoted
from several authorities which purport to give the text
thereof it was provided that the husband during the con-
tinuance of the marriage might freely alienate and dispose
of the community property without the consent of the wife
and that such alienation should be valid unless it be proved
that it was made with intention to defraud her. Among
these authorities the author of opinion quotes from Febrero
as follows: " 'The wife,' says Febrero (1 Feb. Mej. 225, sec.
19), 'is clothed with the revocable and feigned dominion and
possession of one-half of the property acquired by her and
her husband during the marriage; but after his death, it is
transferred to her effectively and irrevocably, so that, by
his decease, she is constituted the absolute owner in property
and possession of the half which he left.' " He further
quotes: " 'The husband needs not the dissolution of the
marriage to constitute him the real and veritable owner of
all the Gananciales, since, even during the marriage, he has
in effect the irrevocable dominion, and he may administer,
exchange, sell and alienate them at his pleasure, provided
there exist no intention to defraud the wife. For this
reason, the husband living, and the marriage continuing, the
wife cannot say that she has any Gananciales, nor interfere
with the husband's free disposition thereof, under pretext
that the law concedes the half to her, for this concession is
intended for the cases expressed and none other.' " The
next case wherein the provisions of the act of 1850 were
considered by this court was that of *Beard* v. *Knox,* 5 Cal.
252 [63 Am. Dec. 125]. In that case the sole question pre-
sented related to the power of the husband to alienate the
community property by devise or will and thus defeat the
right of the surviving wife therein. The court held that
under the terms of said statute this could not be done, and
in so holding used this language: "The husband and wife,
during coverture, are jointly seized of the property, with a
half interest remaining over to the wife, subject only to
the husband's disposal during their joint lives. This is a
present, definite, and certain interest, which becomes
absolute at his death, so that a disposition by devise, which

can only attach after the death of the testator, cannot affect it, for such a conveyance can only operate after death, upon the very happening of which, the law of this state determines the estate, and the widow becomes seized of one-half of the property.'' The next case engaging the attention of this court touching this subject was *Estate of Buchanan,* 8 Cal. 507, wherein the court, after referring to the provisions of the act of 1850, said: ''The law of Mexico in force here until our statute took effect, was the same, so far as relates to the merits of this question. The property belonged to the community, and upon the death of the husband, the widow took one-half. The husband had the power of disposition while living, but not by will, which could only take effect after his death.'' It is to be noted that Field, J., was counsel for the prevailing party in the foregoing case. It is also to be noted that in each of the last-cited cases the question presented to the court related to the power of the husband to dispose of the common property by devise or will so as to defeat the rights of the surviving wife in the same as defined in the Spanish and Mexican laws and as set forth in the provisions of the statute of 1850. In *Smith* v. *Smith,* 12 Cal. 216 [73 Am. Dec. 533] and *Meyer* v. *Kinzer,* 12 Cal. 247 [63 Am. Dec. 538], in each of which cases the opinion was written by Mr. Justice Field, the law embraced in the act of 1850 is referred to as derived from Mexico and the doctrine stated in *Beard* v. *Knox* and *Estate of Buchanan, supra,* is approved. In the case of *Scott* v. *Ward,* 13 Cal. 458, in which the opinion was also written by Mr. Justice Field, the previous decisions of the court touching the respective rights of the spouses in the community property were reviewed with reference to the laws of Mexico, from which our statute was derived, the learned author of the opinion being careful to point out that there was no conflict between the decision in *Estate of Buchanan* and *Panaud* v. *Jones,* in the course of which both Febrero and Escriche, also a learned commentator upon the Spanish and Mexican laws, were commented upon, showing the intimate familiarity of the learned writer of the opinion with both. Again, in the case of *Noe* v. *Card,* 14 Cal. 577, in an opinion also written by Mr. Justice Field, the condition of the Spanish and Mexican laws relating to the property rights of married persons is elaborately reviewed, with

passing references to the decisions of this court referring to those laws. We are thus brought down to a consideration of the decision of this court in the case of *Van Maren* v. *Johnson,* 15 Cal. 308, in which case the opinion was also written by Mr. Justice Field. The action was one wherein creditors of the wife previous to her marriage sought to enforce their claim against the separate property of the wife and the common property of both. The consideration of the case involved an inquiry as to the basis of the right of such creditors to have recourse to the community property for the satisfaction of their claims. In determining this question the author of the opinion apparently felt called upon to decide that the basis of such right was not to be found in the existence of such a vested interest of the wife in the common property as would render that interest subject directly to the lien and execution of a judgment against her for her debt created before her marriage. The conclusion of the court upon this phase of the case was therefore germane and was made doubly so by the fact that the marriage of the defendant had occurred after the inception of the suit and during its pendency, and the question whether her husband was properly to be made a codefendant arose in the case. It will thus be seen that if the wife's interest in the community property was a vested interest and as such subject to the lien and execution of the judgment, her husband, while he might possibly be made a formal would not be a necessary party to the action; while, on the other hand, if the husband was invested with the ownership of the whole of the common property he would be a necessary party to any action the judgment in which for his wife's antenuptial debt was to be enforced against the common property. The following language of Mr. Justice Field in deciding the case was not, therefore, *obiter,* as insisted by and on behalf of the respondent herein, but was directly involved in the determination of both of the foregoing questions in the case: ''The objection taken is the subjection, which the judgment authorizes, of the common property to its payment. The statute in terms provides that the separate property of the wife shall be liable for her debts contracted previous to the marriage, and at the same time, that the separate property of the husband shall not be thus liable. It is silent as to the liability of the common property for such debts, and also as

to the liability of that property for the previous debts of the husband. Yet the common property is not beyond the reach of the husband's creditors existing at the date of the marriage, and the reason is obvious; the title to that property rests in the husband. He can dispose of the same absolutely, as if it were his own separate property. The interest of the wife is a mere expectancy, like the interest which an heir may possess in the property of his ancestor. (*Guice* v. *Lawrence,* 2 La. Ann. 226.) The objection must then be solved by considerations arising from the rule of the common law." Upon petition for rehearing apparently the question was directly presented as to whether the husband of the defendant was a necessary party to be brought into the action, and in denying that petition the court said: "The liability of the common property of the defendants and *the necessity* of making Johnson (the husband) a party arise from the subsequent marriage." We must therefore regard the foregoing language of the court in its main opinion as not only not *obiter dictum* but as expressing the seasoned conclusions of the learned writer of the opinion, derived from a profound familiarity with the Spanish and Mexican laws as evinced by those previous decisions to which reference has above been made. The next decision of this court touching the nature and extent of the respective rights of the spouses in their community property was the case of *Packard* v. *Arellanes,* 17 Cal. 525. The questions which were discussed in that case related to the issue as to whether upon the dissolution of a marriage by the death of the wife one-half of the common property became subject to administration under the provisions of the act regulating the settlement of the estates of deceased persons. In the briefs of counsel the sources of the act of 1850 in the Spanish and Mexican laws relating to the property of the community were elaborately treated, the previous decisions of this court upon the subject were cited and commented upon, and the court accordingly felt itself called upon to go deeply into the question as to the nature of the wife's interest in the common property; and while it may be true that the question as to the rights of the respective spouses in the common property while each was living may not have been directly involved in that decision, nevertheless the thoroughness with which that question was discussed in the argument and treated in the decision

renders the latter not subject to the criticism of being *obiter;* and this especially in view of the fact that the same members of the court who participated in the decision of the case of *Van Maren* v. *Johnson, supra,* concurred in the language of the decision in *Packard* v. *Arellanes.* In the latter case the court cited *Van Maren* v. *Johnson* with approval as to its holding that the wife had no vested estate or interest in the community property during the existence and continuance of the marriage relation, the court saying: "During the marriage the husband is the head of the community, and the law invests him with discretionary power in all matters pertaining to its business or property. In fact its business is conducted and its property acquired in his name, and his authority in the administration of its affairs is exclusive and absolute. The wife has no voice in the management of these affairs, nor has she any vested or tangible interest in the community property. The title to such property rests in the husband, and for all practical purposes he is regarded by the law as the sole owner. It is true the wife is a member of the community, and entitled to an equal share of the acquests and gains; but so long as the community exists her interest is a mere expectancy, and possesses none of the attributes of an *estate,* either at law or in equity. This was held in *Van Maren* v. *Johnson,* before referred to, where the interest of the wife was compared to that which an heir may possess in the property of his ancestor. The same doctrine prevails in Louisiana, and appears to be an established principle of the civil and Spanish law." It is, however, contended by certain of the *amici curiae* herein that this court departed from the doctrine laid down in *Van Maren* v. *Johnson,* and *Packard* v. *Arellanes, supra,* in the case of *Ord* v. *De La Guerra,* 18 Cal. 67, and also in *Payne* v. *Payne,* 18 Cal. 292. We have given careful consideration to both of those opinions. In each the questions dealt with related to the rights which arose under the act of 1850 in the property of the community *after* the death of one or the other of the spouses. No reference is made in either of said cases to the case of *Van Maren* v. *Johnson,* nor is any disposition evinced, so far as we can discover, to depart from either that decision or from the decision in the case of *Packard* v. *Arellanes,* to which but one scant reference, and that not by way of criticism, is made. The same justices who decided the two

earlier cases concurred in deciding the two later ones, and
there is no indication that they had in any degree altered
their views as expressed in those earlier decisions. Nor do
we find any such change of view intimated in the decision
two years later, by the same members of the court, in *Hart*
v. *Robinson*, 21 Cal. 346. That no change had in fact oc-
curred in the attitude of the court touching this subject is
made further evident by the decision of this court in the case
of *Fuller* v. *Ferguson*, 26 Cal. 546, wherein, although the
personnel of the tribunal had entirely changed, the court
undertook to restate the principles of the Spanish and
Mexican laws upon the subject, quoting from Febrero the
language already adopted from that commentator in *Panaud*
v. *Jones, supra*, to the effect that during the marriage and
while both spouses were living the wife had no vested inter-
est in the community property, but that such right came into
being only after her husband's death, when her interest in
the common property passed to her irrevocably and ef-
fectively. While in this case the court also quotes some lan-
guage from Schmidt's Civil Law of Spain and Mexico to the
effect that the relation of the husband and wife as to the
property acquired during marriage was in the nature of a
partnership, the court otherwise evinces no disposition to
disturb the course of its earlier decisions, more precisely
dealing with the nature of the respective rights of each in
the common property during the lifetime of both. During
the next twenty years this court had frequent occasion to
pass upon the rights of the husband and wife in the prop-
erty of the community when by death or divorce the issue
of the resultant rights of the parties came into question, the
cases touching thereon being: *Morrison* v. *Bowman*, 29 Cal.
337; *Dow* v. *Gould, etc.*, 31 Cal. 620; *Peck* v. *Brummagim*, 31
Cal. 442 [89 Am. Dec. 195]; *Galland* v. *Galland*, 38 Cal.
265; *De Godey* v. *De Godey*, 39 Cal. 157; *Broad* v. *Broad*,
40 Cal. 493; *Broad* v. *Murray*, 44 Cal. 228; *Johnson* v. *Bush*,
49 Cal. 198; *Cook* v. *Norman*, 50 Cal. 634. In none of these
cases, with the single exception of *De Godey* v. *De Godey*,
*supra*, were the earlier decisions of the court defining the
interest in the property of the community during its con-
tinuance reviewed, nor the doctrines laid down in anywise
disturbed. In the De Godey case, which was an action for
an injunction commenced some time after a divorce had been

adjudged between the parties, but in which judgment the community property rights of the parties had not been determined, Mr. Justice Wallace, in deciding the case, referred to the case of *Van Maren* v. *Johnson, supra,* as stating that "the interest of the wife therein pending the marriage has been termed 'a mere expectancy,' " but, continues Judge Wallace, "while perhaps no other technical designation would so nearly define its character, it is, at the same time, an interest so vested in her that the husband cannot deprive her of it by his will (*Beard* v. *Knox,* 5 Cal. 256 [63 Am. Dec. 125]), nor voluntarily alienate it for the mere purpose of divesting her of her claims to it. (*Smith* v. *Smith,* 12 Cal. 226 [73 Am. Dec. 533].) The theory upon which the right of the wife is founded is that the common property was acquired by the joint efforts of husband and wife and should be divided between them *if the marriage tie is dissolved either by the death of the husband or by the decree of the court."* The foregoing or the further statement of Mr. Justice Wallace in that case with reference to the nature of the rights of the wife in the common property, while apt and accurate with respect to the facts of that particular case, cannot be held to have disturbed or diverted the course of the court's consistent line of decision relating to the rights of husband and wife in the property of the community when neither death nor other dissolution of the marital relation has occurred to change that relation. This is made plain by the later decisions of this court to which we shall presently advert. The case of *Greiner* v. *Greiner,* 58 Cal. 115, is not of much value to either of the litigants in the instant case, for the reason that the members of the court were in such disagreement as to render it doubtful as to whether there was a majority decision upon the main issues in the case. It may be said, however, that the division did not arise over the correctness of the earlier cases above referred to, but over their applicability to the facts of the case at bar. In the case of *In re Rowland,* 74 Cal. 523 [5 Am. St. Rep. 464, 16 Pac. 315], it was stated by Mr. Chief Justice Searles in deciding the case that under the changes made in section 11 of the act of 1850 by its subsequent amendments embodied in section 1401 of the Civil Code, upon the death of the wife the entire community property belongs to the surviving husband, who does not take by possession. In the language

of the Chief Justice: ''The *estate in expectancy* of the wife in the community property is dependent upon her survivorship; and in the event of her death before the husband it is deemed never to have existed. If we are correct in this, the husband does not, upon the death of his wife, as to the community property, take by descent or succession, but holds the community property as though acquired by himself and as if his deceased wife had never existed.'' Certain *amici curiae* herein make a vigorous assault upon the foregoing statement of Mr. Chief Justice Searles, particularly with respect to the capacity in which the surviving husband takes and holds the property upon the death of his wife; but with respect to the foregoing statement of the learned author of the opinion as to the interest of the wife in the common property while both spouses are living in the marriage relation it is to be noted that the views of Chief Justice Searles upon that subject were those which had been long and consistently held by him, since it appears that he was counsel for the prevailing party in the first appeal brought to the Supreme Court involving this question, viz.: the case of *Panaud* v. *Jones, supra;* and hence that the language employed by him in *Estate of Rowland, supra,* is not to be lightly regarded as mere *dictum,* or as inadvertently employed. The decision, while originally in department, was adopted by the full court through its unanimous denial of a petition for rehearing. In the case of *In Estate of Burdick,* 112 Cal. 387 [44 Pac. 734], the court again had occasion to consider the nature of the estate of the wife in the community property upon the death and distribution of the estate of her deceased husband. The probate court in the settlement of the latter's estate and in its decree of distribution undertook to determine the extent of the interest of his widow in the community property and to distribute the widow's portion thereof to her. The appeal was presented upon the theory that the estate of the wife in the property of the community was such a vested interest therein as that she did not take the same by succession and hence that the probate court had no jurisdiction or power to deal with such interest in the course of the probate and distribution of the estate of the deceased husband. In disposing of this claim Mr. Justice Temple held that the title to the community property was in the husband and that the wife's interest in it during his life-

time was a mere expectancy. He bases that conclusion upon *Packard* v. *Arellanes, supra,* from which he quotes as follows: "It is true the wife is a member of the community and entitled to an equal share of the acquests and gains; but as long as the community exists her interest is a mere expectancy and possesses none of the attributes of an estate at law or in equity." And the learned justice goes on to say: "The legal title to the community property is in the husband. He has the absolute dominion and control of it, and the wife has no right or title of any kind in any specific property, but a possible interest in whatever remains upon a dissolution of the community otherwise than by her own death. This cannot be classified as any species of estate known to the law." In the foregoing opinion Justices McFarland, Van Fleet, and Henshaw concurred; but Justices Harrison and Garoutte, while concurring in the judgment of affirmance, disagreed with the reasoning and conclusions of the majority membership of the court as to the nature of the wife's interest in the property of the community being "a mere expectancy" or being derivable by succession upon her husband's death. In that portion of the minority opinion in which Justice Harrison dissents from the foregoing conclusions he refers to the cases of *Van Maren* v. *Johnson* and *Packard* v. *Arellanes, supra,* but maintains that the language of those cases holding the interest of the wife to be "a mere expectancy" during the existence of the marital relation was modified by the later decision of the court in the case of *De Godey* v. *De Godey, supra,* wherein it was stated with reference to that phrase that "while, perhaps, no other technical designation would so nearly define its character, it is at the same time an interest so vested in her as that the husband cannot deprive her of it by his will nor voluntarily alienate it for the mere purpose of divesting her of her claims to it." The minority justices, therefore, concluded that the interest of the wife does not upon the death of the husband come to her by succession, but that nevertheless the probate court has, under the express provisions of the code, power to deal with the entire property of the community in the course of administration of the deceased's husband's estate and to assign the widow her share of the remainder thereof after such administration by its decree of distribution. Following this decision and in the next year,

and while the personnel of the court remained the same, came the decision in the case of *Spreckels* v. *Spreckels*, 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228], the opinion in which was also written by Mr. Justice Temple and was fully concurred in by Justices Henshaw, Harrison and McFarland, and qualifiedly concurred in by Chief Justice Beatty. In the main opinion in that case Justice Temple goes more fully into the sources of our laws respecting community estates than was done by him in his former opinion and also into the state of the decisions and statutes regarding the same. In so doing the learned justice points out that while the system of the community law was inherited from Spain and Mexico by California, Louisiana and Texas and was later adopted by Washington, Nevada, Idaho and Arizona, variations therein had arisen in these separate sovereignties according to local conditions or opinions which had resulted in divergent views as to the nature of the wife's interest in the property of the community during the continuance of the marital relation. Mr. Justice Temple proceeds to review and reconcile the decisions of this court upon the subject, citing *Panaud* v. *Jones, supra,* with its quotation from Febrero, and the later leading cases of *Van Maren* v. *Johnson* and *Packard* v. *Arellanes* in harmony with it; and further showing that *Beard* v. *Knox, De Godey* v. *De Godey* and *Smith* v. *Smith, supra,* are, when properly interpreted, not out of line with these earlier cases. The learned writer of the opinion also calls attention to the fact that the Spanish commentators Febrero and Escriche are not at variance in stating that the wife's interest in the community under the Spanish and Mexican laws was merely a nominal or "feigned" interest which did not become an actual estate until the dissolution of the marriage. He also quotes from Ballinger, our leading text-writer on community property, as declaring that under the Mexican law as above stated the wife had only a feigned or fictitious estate which ripened into a legal estate upon the termination of the marriage. With respect to the phrase "a mere expectancy" employed by Mr. Justice Field in *Van Maren* v. *Johnson,* Justice Temple says: "I doubt if a happier phrase could have been devised to express the interest of the wife in the community. . . . It may be said to be a right—not to property, as against the community—to take one-half of the

residue after payment of debts in case the marriage be dissolved during her life. A somewhat similar state of things exists in France, under the code, and it has been there said that the wife is not '*proprie socia, sed speratur fore.* She has *une simple esperance* to share in such property as may be found at the dissolution of the community undisposed of by the husband.' (1 Burges' Colonial Law, 368.)'' It is to be noted that the court in treating the interest of the husband in the community property as a vested interest in the whole thereof during the existence of the community was doing so prior to the amendment to section 172 of the Civil Code in 1891 (Stats. 1891, p. 425), and as to that interest the court held that the code prior to such amendment "*vested* in the husband with reference to the community property all the elements of ownership and in the wife none." It is to be also noted that Mr. Justice Harrison, who wrote the qualifying opinion in the *Estate of Burdick, supra,* expressly concurred in the opinion of Mr. Justice Temple in the Spreckels case. This decision, if adhered to, puts an end to the discussion as to whether the language of any of the earlier decisions of this court referred to and approved therein was *dictum;* and also disposes of the question as to whether those decisions, or any of them, were predicated upon any misconception of the Spanish and Mexican laws respecting the estate or interest of the wife in the property of the community during the continuance of the marriage relation. In the two cases which presently followed the foregoing decision, *Sharp* v. *Loupe,* 120 Cal. 89 [52 Pac. 134, 586], and *Cunha* v. *Hughes,* 122 Cal. 111 [68 Am. St. Rep. 27, 54 Pac. 535], the doctrine declared in *Estate of Burdick, supra,* to the effect that the wife took her share of the community property by succession from her husband, is approved, the court citing the above case as authority for that conclusion, and Mr. Justice Harrison writing and Mr. Justice Garoutte concurring in each of said decisions.

Thus the course of decision touching this subject stood for another decade until the case of *Estate of Moffitt* arose under the Inheritance Tax Statute approved March 20, 1905 (Stats. 1905, p. 341), wherein it was provided that "All property which shall pass by will or by the intestate laws of this state from any person who may die seized or pos-

sessed of the same . . . shall be and is subject to a tax here-
inafter provided for.'' The single question presented upon
appeal in the above case was whether the surviving wife's
share of the community property was subject, under the
terms of said statute, to an inheritance tax. In determining
that question the court reviewed its past decisions, fully
approving its most recent utterances in the cases of *Estate
of Burdick* and *Spreckels* v. *Spreckels, supra,* and also restat-
ing with approval the conclusions of Chief Justice Field and
Mr. Justice Cope as to the state of the Spanish and Mexican
laws from which the statute of 1850 had been derived as
expounded in *Van Maren* v. *Johnson* and *Packard* v. *Arel-
lanes, supra,* and quoting from the latter as declaring that
''so long as the community exists her interest is a mere ex-
pectancy and possesses none of the attributes of an estate
either at law or in equity.'' The court accordingly held
that the community interest of the wife derived from her
husband upon his death was subject to the provisions of the
said inheritance tax law.

Before proceeding further with an examination of our
decisions touching this subject it may be well to glance
briefly at the course of legislation upon it. We have already
noted the provisions of the act of 1850. That statute re-
mained unchanged until the year 1861, when section 11
thereof was amended so as to provide that upon the death
of the wife the whole of the community property, instead
of one-half as formerly, should go to the surviving husband.
(Stats. 1861, p. 310.) In the year 1864 (Stats. 1863–64, p.
363), section 11 of the act of 1850 was further amended so
as to dispense with any administration upon the community
property in the event the wife died first. The act of 1850,
with its foregoing amendments, was carried into the Civil
Code upon its adoption in 1872, and the law of community
property as thus codified and as the same had been thus
far interpreted, remained practically unchanged until the
year 1891, when section 172 of the Civil Code which up to
that year had read: ''The husband has the management and
control of the community property with the like absolute
power of disposition, other than testamentary, as he has of
his separate estate,'' was amended by adding thereto this
provision: ''Provided, however that he cannot make a gift
of such community property, or convey the same without a

valuable consideration unless the wife in writing consent thereto.'' In the year 1901 (Stats. 1901, p. 598), the following further proviso was added to said section: ''And provided also that no sale, conveyance or incumbrance of the furniture, furnishings and fittings of the home or of the clothing and wearing apparel of the wife or minor children, which is community property, shall be made without the written consent of the wife.'' In the case of *Spreckels* v. *Spreckels, supra,* it was earnestly urged that by the amendment to section 172 of the Civil Code in 1891 the status of the husband as invested with the sole ownership of the community property had been changed and that the wife had thereby become invested with an ownership in the undivided one-half thereof. The court did not, however, deem it necessary to dispose of that question in that case, confining itself to the declaration that any legislative attempt to encroach upon the vested ownership by the husband of the property of the community so as to be retroactive upon such property owned by him prior thereto would be unconstitutional as an interference with his vested rights in such property. In the second case of *Spreckels* v. *Spreckels,* 172 Cal. 775 [158 Pac. 537], the question as to the effect of such amendment to section 172 of the Civil Code was directly presented and this court, after the painstaking manner of Mr. Justice Shaw, went again over the ground covered by its former decisions from the beginning of our judicial history, reviewing all of the cases wherein it had been laid down as the established doctrine in this state that under our statutes as they existed prior to 1891, the husband was, during the marriage, ''the sole and exclusive owner of all the community property and that the wife had no title thereto nor interest or estate therein, other than a mere expectancy as heir if she survived him.'' Having so again held, the court proceeded to say: ''We are satisfied that the proviso of 1891 does not render a gift of community property by the husband without the consent of the wife void as to him, nor confer upon him, in his lifetime, or upon his personal representatives after his death, any right or power to revoke the gift or recover the property. There is nothing in the language to express the idea that the title does not, as before, remain wholly in him. The provision is merely for a limitation upon his power to dispose of it. He is bound by his

own gift as fully as if it was of his separate estate. . . . Neither does the proviso purport to vest in the wife, during the marriage, any present interest or estate in the community property given away by the husband without her written consent. In view of the long-settled doctrine that the entire estate therein is in the husband during the marriage relation, a doctrine that had become a fixed and well understood rule of property, it is not to be supposed that the legislature would have made a change of so radical a character without plain language to that effect. We do not find in the proviso such language, nor anything that can reasonably be so construed. If it confers upon her, during the marriage, any right respecting such gifts, it is nothing more than a right to revoke the gift and, if necessary, sue to recover the property, not as her separate estate, but to reinstate it as a part of the community property, with the title vested in the husband and subject to sale by him, as before. We do not find it necessary to determine whether this right accrues to her at once when the gift is made, or whether it remains in abeyance until her expectancy in the community property becomes vested by the dissolution of the marriage by death or divorce. In either case, upon the facts alleged, the present action must fail.'' In the case of *Dargie* v. *Patterson*, 176 Cal. 714 [169 Pac. 360], decided in the following year, this court again had occasion to deal with the effect of the amendment of 1891 upon the status of the wife in relation to the community property as it existed under said section of the code prior to its said amendment, and in so doing fully reaffirmed, with apt quotation therefrom, what it had so recently decided in the second Spreckels case. In so doing, the court went so far as to expressly disapprove of certain utterances of Chief Justice Beatty in his concurring opinion in the first Spreckels case and which might lend color to the view that prior to the husband's decease, but subsequent to the act of 1891, the wife had some sort of vested interest in property which the husband had undertaken to give away, other than her interest as an heir. The foregoing utterances of this court in the second case of *Spreckels* v. *Spreckels* as to the interest of the wife in the community property, and especially its declaration that ''In view of the long settled doctrine that the entire estate therein is in the husband during the mar-

riage relation, *a doctrine that had become a fixed and well
understood rule of property,* it is not to be supposed that the
legislature would have made a change of so radical a char-
acter without plain language to that effect," while applied
to the code amendment of 1891 has also a particular sig-
nificance in its application to subsequent legislation upon
the subject. In the year 1917 (Stats. 1917, p. 880), the
legislature adopted an act revising the inheritance tax laws
and in so doing changed the intendment of the act of 1905
as interpreted by this court in *Estate of Moffitt, supra,* and
as continued in force in the later amendments of said act
down to the year 1917. In said revision of the latter year
the legislature added the following proviso, viz.: "Provided,
that for the purpose of this act, the one-half of the com-
munity property which goes to the surviving wife on the
death of the husband, under the provisions of section one
thousand four hundred two of the Civil Code, shall not be
deemed to pass to her as heir to her husband, but shall, for
the purpose of this act, be deemed to go, pass, or be trans-
ferred to her for valuable and adequate consideration and her
said one-half of the community shall not be subject to the
provisions of this act." It is to be observed that the fore-
going proviso is by its terms expressly limited to "the pur-
poses of this act," thus clearly indicating by exclusion that
it was not the purpose of the legislature of 1917 (Stats.
1917, p. 881), to change the otherwise general and long-
established rule of property except in its application to the
particular and limited purposes of said inheritance tax law.
This is made plain when we come to consider the further
legislative enactments adopted of even date with the fore-
going act in the form of certain amendments to the several
sections of the Civil Code relating to community property.
Section 164 of the Civil Code as it had existed since 1897
(Stats. 1897, p. 63), was amended by adding certain clauses
thereto which it is not contended are in any respect germane
to this litigation. Section 172 of said code was also amended
(Stats. 1917, p. 829), so as to read as follows: "The hus-
band has the management and control of the community
personal property, with like absolute power of disposition,
other than testamentary, as he has of his separate estate;
provided, however, that he cannot make a gift of such com-
munity personal property, or dispose of the same without

a valuable consideration, or sell, convey, or encumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife." In addition to the foregoing amendment of section 172, 172a was added thereto, reading as follows: "The husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered; provided, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from filing for record of such instrument in the recorder's office in the county in which the land is situate." [1] It is most earnestly contended by and on behalf of the respondent herein that the changes in the laws relating to community property effectuated by these two latter amendments were such as to create in the wife, if such had not theretofore existed, a vested interest in an undivided one-half of the community property immediately upon the acquisition of such property by the spouses or either of them, and to continue thereafter during the existence of the marriage relation. We are unable for the following reasons to give our approval to that contention. The legislature in framing these two amendments which, taken together, worked a revision of the former section 172 of the Civil Code did not state therein "in plain language," as it was pointed out in the second Spreckels case it might easily have done, "that the purpose of these amendments was to *vest* in the wife during the marriage a present interest or estate in the community property." The legislature did not even by said amendments to the Civil Code go so far as it had done in its revision of the inheritance tax law, coincidently adopted, so as to state that the "one-half of the community property which goes to the surviving wife on the death of the husband . . . shall not be deemed to pass to her as heir of her husband but shall . . . be deemed to go, pass or be transferred to her for valu-

able and adequate consideration." Had the legislature seen fit to so declare in the language employed by it in the coincident statute, no doubt could have existed as to its intent to work such a radical change in the former and long-established status as to render the interest of the wife in the community property thereafter to be acquired a present vested estate and interest therein from the date of its acquisition. The legislature did not do this nor anything like it. [2] All that the legislature by these amendments did do or attempt to do was to cast about the interest of the wife in both the real and personal property of the community during the continued existence of the marriage relation added safeguards and protection against the fraudulent or inconsiderate acts of the husband in the exercise of his control and dominion over these properties of the nature of those already provided for in earlier statutes and especially in and by the 1891 amendment to section 172 of the Civil Code. It follows, to our minds, irresistibly that the same reasoning which was applied to the earlier amendment of section 172 of the Civil Code equally applies to those changes in and revision thereof accomplished by the legislature in 1917. Additional force is, if needed, given to this conclusion when the particular provisions of section 172a as added to the code in that year are subjected to careful consideration; for it is made to therein appear that the sole lease, contract, mortgage or deed of the husband holding the record title to community real property to a lessee, purchaser or encumbrancer in good faith, without knowledge of the marriage relation, shall be presumed to be valid and shall be so unless an action to avoid such instrument shall be commenced within one year from the recordation thereof. This provision renders the conveyance of the whole of the community real estate to a purchaser or encumbrancer thereof in good faith voidable but not void; a condition entirely inconsistent with the existence of a present and vested ownership in the wife of an undivided one-half of such property, and also with an intent on the part of the legislature by said amendments to effectuate such a radical change in a long-established rule of property. We are, therefore, clearly of the opinion that the amendments to the Civil Code, adopted in 1917, did not operate to change such rule to the extent of creating in the

wife a present vested interest in the property of the community during the continuance of the marriage relation.

In what has been heretofore said in this opinion we are not unmindful of the fact that in certain of the other states which have been designated as "community property states," or in other words, states which immediately derived or have mediately adopted their laws relating to community property from the laws of Spain and Mexico, a different interpretation of those laws and of the statutes based thereon has prevailed, and that much emphasis has been laid during the presentation of this cause in the argument and briefs of counsel upon the divergence existing between the decisions in California and in these several other jurisdictions. Discussions of this character are interesting but are by no means controlling in dealing with questions involving conflicts in laws. California was as much entitled as New Mexico or Texas or Washington to adopt and to persist in its own interpretation of the meaning and effect of the Spanish and Mexican laws in relation to the wife's interest in the community property. Having made and persisted in its own interpretation of these originals through all these years and having by so doing created and consistently adhered to such interpretation as to render the same a fully established rule of property it is for the legislature, but not for this court, to depart from such rule. Up to and including the year 1917 the legislature has ·not, in our opinion, seen fit so to do. [3] The parties to this action acquired the property affected by this litigation during the year 1918. It being admitted that the property then became and has since been community property, the respective rights of the said parties thereto, in so far as those rights do or do not amount to vested interests therein, must be determined by the state of the law at the date of their acquisition of said property. (*Spreckels* v. *Spreckels,* 116 Cal. 339–349 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228].) It is not necessary to consider later changes in the law and particularly those changes which relate to succession. Nor do we think that any further prolonged discussion is required with respect to the more recent decisions of this court. The case of *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22], in which the opinion was written by Mr. Justice Lawlor and concurred in by a united court, followed along the beaten track

of our former decisions touching the wife's interest in the community as it existed prior to 1917. It is, however, pertinent to the present discussion in so far as it considers and we think correctly disposes of the cases of *Blum* v. *Wardell,* 270 Fed. 309, and 276 Fed. 226, so much reiterated and relied upon by the respondent herein, and also considers and disposes of the case of *Arnett* v. *Reade,* 220 U. S. 311, 55 L. Ed. 477, 31 Sup. Ct. Rep. 425 [6 L. R. A. (N. S.) 1040, see, also, Rose's U. S. Notes], to the satisfaction of this court. With respect to *Estate of Brix,* 181 Cal. 667 [186 Pac. 135], we find nothing in the opinion of Mr. Justice Shaw, the writer of the opinion therein, out of line with the previous utterances of that jurist in cases written or concurred in by him and hereinabove commented upon. Nor do we find anything in *Estate of Jolly,* 196 Cal. 547 [238 Pac. 353], which militates against the main current of decision in our earlier cases as reviewed in this opinion. The most recent decision of this court touching the subject is that of *Blethen* v. *Pacific Mutual Life Ins. Co. et al.,* 198 Cal. 91 [243 Pac. 431], in which an opinion written by Mr. Justice Lennon and concurred in by the full court, the earlier and later cases are again reviewed, and the conclusions reached in *Dargie* v. *Patterson* and *Roberts* v. *Wehmeyer, supra,* are approved. We do not deem it necessary to prolong this opinion by commenting upon the opinion of the Supreme Court of the United States in the recent case of *United States* v. *Robbins,* 269 U. S. 315 [70 L. Ed. 183, 46 Sup. Ct. Rep. 148], nor in adverting to the varying views of certain officials of the federal government as to the present state of the laws of California relating to community property and as to the status of the wife's interest therein as affected by inheritance tax legislation. [4] We wish to say in conclusion that we are in accord with the intimations from time to time reflected by this court in the long line of its past decisions to the effect that the interest of the wife in the property of the community during the continuance of the marriage relation while it has not yet reached the status of a vested interest therein, is and has always been from a time reaching back into the Spanish and Mexican originals of our community property laws a much more definite and present interest than is that of an ordinary heir. She has, by virtue of the share which in

her own sphere she has contributed toward the acquisition and conservation of such properties, rights therein which have been always safeguarded against the fraudulent or inconsiderate acts of her husband with relation thereto and for the assertion and safeguarding of which she has been given access to appropriate judicial remedies both before and after the time when her said rights and interests would ripen and become vested through the death of the husband or other severance of the marriage relation whenever such rights and ultimate interests were affected by or threatened with such forms of invasion. The instant case is not, however, such a case. In her complaint herein the plaintiff expressly alleges that she and the defendant her husband, "are now and ever since their said marriage have been peacefully and happily living together as husband and wife." She nowhere alleges therein that her said husband is attempting or threatening to deal with or dispose of said property fraudulently or inconsiderately or otherwise so as to affect or in anywise endanger her legal rights and interests therein. He could not do so, in fact, even if he did so desire, since the legal title to said property stands of record in the plaintiff's name. The trial court was clearly in error in adjudging that the interest of the plaintiff in said property was that of "the owner of an undivided one-half valid present *vested* interest in and to the within described property."

The judgment is reversed.

Shenk, J., Waste, C. J., Curtis, J., and Seawell, J., concurred.

Rehearing denied.