[Civ. No. 530.   Fourth Appellate District.—April 1, 1932.]

ETHEL MARK, Appellant, v. TITLE GUARANTEE & TRUST COMPANY (a Corporation) et al., Respondents.

George S. Hupp and Charles Katz for Appellant.

Hyams & Himrod and Aubrey Devine for Respondents.

JENNINGS, J.—The appeal herein is taken by the plaintiff from a judgment denying to her the relief which she sought by the institution of the action. Plaintiff's complaint, which was filed November 23, 1927, alleged that at all times therein mentioned she was the wife of defendant William Mark; that on April 25, 1923, defendant Title Guarantee & Trust Company, being the record owner of the legal title to lot 69 of tract 5780 in the city of Los Angeles, California, entered into a contract with William Mark whereby said owner agreed to sell to William Mark and the latter agreed to buy the above-described real property; that William Mark made the payments required by the terms of the contract from moneys earned by him during coverture; that on December 1, 1926, William Mark, without the knowledge or consent of plaintiff and without her joining in the sale, transfer or assignment, sold, transferred and assigned to defendants Carl Siegrist and Caroline Siegrist all his right, title and interest in and to the contract to purchase said real property theretofore entered into between him and the defendant Title Guarantee & Trust Company, for a specified sum which William Mark retained for his own use and benefit, and that no

portion of such sum of money thus received by William Mark entered into the community of plaintiff and defendant William Mark. It was further alleged that the sale and transfer by William Mark was made by him for the purpose of defrauding and with the intent to defraud plaintiff of her community rights in the property and that she was thereby defrauded and deprived of her community rights. The prayer of the complaint was for annulment and cancellation of the assignment and sale to defendants Siegrist and that the property be declared to be community property of plaintiff and defendant William Mark.

The trial court found that plaintiff was the wife of defendant William Mark; that all payments made by defendant William Mark under the contract of purchase entered into between him and the defendant Title Guarantee & Trust Company were made from earnings of said William Mark during coverture and that the money so paid had not been acquired by William Mark by gift, bequest, devise or descent, and that William Mark, without the knowledge or consent of plaintiff, his wife, and without her joining in the sale, transfer or assignment, did assign, transfer and sell to defendants Carl Siegrist and Caroline Siegrist all of his right, title and interest in and to the contract to purchase the real property made by him with the Title Guarantee & Trust Company; that defendants Siegrist paid to William Mark a specified sum of money in consideration of the sale and assignment of the property to them and that William Mark retained the whole of the money thus received for his own use and benefit and that no portion thereof entered into the community of plaintiff and defendant William Mark; that at the time of the sale to defendants Siegrist, William Mark represented to them that he was unmarried and the Siegrists accepted the transfer believing that William Mark was unmarried; that William Mark so represented himself to be unmarried for the purpose of inducing the Siegrists to accept the transfer without the necessity of having his wife join therein and for the further purpose of transferring the property without his wife knowing of the same and with the intention of obtaining the money paid to him by the Siegrists and of applying such money to his own use, and that he then had in mind the filing of an action for divorce against his wife, which action he did institute on December

4, 1926, and in his complaint in such divorce suit he did not include the contract or the proceeds obtained by him from its sale and assignment as community property; that plaintiff did not learn of the sale and transfer of the contract until after the institution of the divorce suit; that the plaintiff did not know of the assignment and transfer to the Siegrists at the time it was made nor did she consent to or approve of it; that the issues involved herein were not adjudicated adversely to plaintiff in the divorce action and that the moneys received by defendant William Mark from the sale of the contract were not adjudicated in said divorce suit. From the findings thus made the court drew the following conclusions: First, that defendants Siegrist were purchasers in good faith and for value and without notice that defendant William Mark was married; second, that plaintiff was not estopped or precluded from questioning the validity of the sale of the contract; third, that by reason of defendants Siegrist being purchasers in good faith and for value they acquired good and legal title to the contract under the provisions of section 172a of the Civil Code and that the sale and transfer to them is conclusively presumed to be valid and that they thereby acquired all right, title and interest of plaintiff and defendant William Mark in and to said contract. In accordance with the findings thus made and the conclusions of law drawn therefrom, judgment was rendered denying to plaintiff the relief which she sought.

Since the appeal is taken on the judgment-roll alone, the findings of the trial court are deemed to be supported by the evidence and all intendments are in their favor. (*Porter* v. *Hilton*, 214 Cal. 705 [298 Pac. 501, 7 Pac. (2d) 301].) No such sanctity, however, attaches to the conclusions of law which the court draws from the findings. As above noted, the court drew three conclusions: first, that respondents Siegrist were purchasers in good faith, for value, without notice; second, that appellant was not estopped from questioning the validity of the transfer to respondents Siegrist; third, that the sale and transfer to respondents Siegrist is conclusively presumed to be valid. No objection is offered to the first and second of the above-mentioned conclusions, but it is urged that the third conclusion is incorrect.

The conclusion of the court that the purchase of community property by a third person in good faith without

knowledge of the marriage relation from a husband who, without the knowledge or consent of his wife, alone executes the instrument by which the property is conveyed is conclusively presumed to be valid is based upon the provisions of section 172a of the Civil Code. Upon the interpretation which is to be placed upon the language of this section, therefore, the correctness of the trial court's conclusion depends. On December 1, 1926, the date of the transfer by respondent William Mark to respondents Siegrist, this section read as follows:

"Management of Community Real Property. The husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided also, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate." (Stats. 1925, p. 84.)

It is to be observed that the section states that the sole lease, contract, mortgage or deed of the husband to a lessee, etc., in good faith without knowledge of the marriage relation, shall be presumed to be valid. The section does not say that such conveyance shall be conclusively presumed to be valid. Nevertheless, in *Rice* v. *McCarthy*, 73 Cal. App. 655, 662 [239 Pac. 56, 58], Presiding Justice Finlayson of the District Court of Appeal for the Second District, Division Two, in discussing the language of the proviso which is here under consideration, used the following language:

"The word 'presumed' as used in the declaration of the proviso that every lease, contract, mortgage or deed which is under its protecting aegis 'shall be *presumed* to be valid', is doubtless used in the sense that it is *conclusively* presumed

that every such lease, contract, mortgage or deed is valid. We have then in this part of the section what is tantamount to an express statutory recognition of the passing of the title to the lessee, grantee, vendee or mortgagee whenever those conditions exist which are defined in the proviso.''

The learned author of the opinion then proceeded to analyze the concluding clause of the section which provides that ''no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate'', and arrived at the conclusion that the language of this clause is to be interpreted as referring back to and modifying the language in the first part of the section, wherein it is said: ''the husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed or encumbered''. The interpretation thus placed upon the language of the concluding clause of section 172a of the Civil Code as this clause read until it was recast by the amendment in 1927, differs from the interpretation given by the Supreme Court in *McKay* v. *Lauriston,* 204 Cal. 557, 564 [269 Pac. 519, 522], wherein Justice Curtis, in discussing the 1917 amendments to sections 172 and 172a of the Civil Code, uses the following language:

''All that the legislature by these amendments did do or attempt to do was to cast about the interest of the wife in both the real and personal property of the community during the continued existence of the marriage relation added safeguards and protection against the fraudulent or inconsiderate acts of the husband in the exercise of his control and dominion over these properties of the nature of those already provided for in earlier statutes and especially in and by the 1891 amendment to section 172 of the Civil Code. It follows, to our minds, irresistibly that the same reasoning which was applied to the earlier amendment of section 172 of the Civil Code equally applies to those changes in and revision thereof accomplished by the legislature in 1917. Additional force is, if needed, given to this conclusion when the particular provisions of section 172a as added to the code in that year are subjected to careful consideration; for it is made to therein

appear that the sole lease, contract, mortgage or deed of the husband holding the record title to the community real property to a lessee, purchaser or encumbrancer in good faith, without knowledge of the marriage relation, shall be presumed to be valid *and shall be so unless an action to avoid such instrument shall be commenced within one year from the recordation thereof.* (Italics ours.) This provision renders the conveyance of the whole of the community real estate to a purchaser or encumbrancer thereof in good faith voidable but not void . . . "

However, careful reading of the decision in *Rice v. McCarthy, supra,* leads to the conclusion that the language stating that the presumption of validity declared by the proviso in section 172a of the Civil Code, to attach to the sole transfer of community real estate by the husband to a purchaser in good faith without knowledge of the marriage relation is a conclusive presumption is *dictum,* and that the language interpreting the concluding clause of the section relative to the institution of an action to avoid the instrument whereby the husband alone has transferred real property of the community is likewise *dictum.* The question which was presented to the court for decision was whether or not the trial court had erred in failing to make findings upon the facts which were pleaded by the defendant in the action as constituting estoppel upon the plaintiff wife. It was urged that the doctrine of estoppel was not invocable by the husband's transferee. The decision was that the doctrine of estoppel was invocable and that the trial court had erred in failing to make findings upon the facts pleaded by the defendant which it was claimed raised an estoppel in his favor. It was not necessary to the decision to consider whether the presumption of validity declared by the proviso is a conclusive presumption or a disputable presumption. Furthermore, it may be noted that if the presumption of validity is conclusive there was no point in considering the doctrine of estoppel, since there is no possibility of the wife in any manner avoiding the sole transfer of community property by her husband to a purchaser in good faith without knowledge of the marital relation. Once these facts are established, any attempt on her part to avoid her husband's sole conveyance must fail if the presumption is conclusive. It may likewise be conceded that the above-quoted language of Justice Curtis

in *McKay* v. *Lauriston, supra,* is *dictum.* Under these circumstances, therefore, it is proper to consider whether the language of the proviso declaring that the sole lease, contract, mortgage or deed of the husband to a lessee, purchaser or encumbrancer, in good faith, without knowledge of the marriage relation, shall be presumed to be valid is a conclusive presumption or merely a disputable presumption. A presumption is defined in section 1959 of the Code of Civil Procedure as a deduction which the law expressly directs to be made from particular facts. Section 1957 of the same code classifies presumptions as indirect evidence. Section 1962 of the Code of Civil Procedure, specifies certain presumptions which are exclusively deemed to be conclusive. This section contains seven subdivisions. The first six specify certain presumptions none of which directly or by implication relates to the presumption mentioned in the proviso of section 172a of the Civil Code, here under consideration. Subdivision 7 is in the following language: "Any other presumption which by statute is expressly made conclusive." Section 1963 of the Code of Civil Procedure, is entitled "All other presumptions may be controverted." The language of the first part of this section is as follows: "All other presumptions are satisfactory if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence." Then follow forty specifications of presumptions which are described as being of the character of disputable presumptions. Since section 172a of the Civil Code does not expressly declare that the presumption of validity which attaches to the sole lease, contract or deed of a husband holding record title to community property to a lessee or purchaser in good faith without knowledge of the marriage relation is a conclusive presumption, it logically follows that, under the language of the above-mentioned sections of the Code of Civil Procedure, the presumption is one that may be controverted. Section 164 of the Civil Code provides that "whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired by a married woman by an instrument in writing the presumption is that the same is her separate property . . . " If the statute contained no further reference to the presumption it would undoubtedly be held to be not a conclusive presumption, but a disputable presumption capable of being con-

troverted by evidence showing that, although the written instrument conveying the property ran to the wife alone, nevertheless, in fact, the property was community property. This was the holding of the court in *Pabst* v. *Shearer,* 172 Cal. 239, 242 [156 Pac. 466]. To the same effect are the decisions in *Stafford* v. *Martinoni,* 192 Cal. 724 [221 Pac. 919], and *Goucher* v. *Goucher,* 82 Cal. App. 449 [255 Pac. 892]. But there is further reference in the section to the presumption, and it is expressly declared that as to a purchaser, encumbrancer, payor, or any other person dealing with a married woman, in good faith and for a valuable consideration, the presumption is conclusive. In view of such express legislative declaration there can be no doubt that, in favor of one dealing with a married woman in good faith and for a valuable consideration it would be held that the presumption that she was the sole owner of property conveyed to her by written instrument was incapable of being controverted. Section 172a of the Civil Code does not, however, contain such express declaration evidencing legislative intent that the presumption of validity shall be incapable of being controverted. The question which naturally suggests itself is: How may the presumption be controverted?" Not, of course, by a showing that the husband who had held himself out to the innocent purchaser as being unmarried was in fact married, since the existence of the marital relation is a fact essential to the creation of the presumption; not by a showing of knowledge of the marital relation by the innocent purchaser or lack of consideration for the language of the proviso presupposes the existence of consideration and lack of knowledge of the marital relation in order that the presumption of validity shall apply. By a process of elimination it may be reasonably deduced that the only escape from the presumption of validity lies in a showing by the wife that she was uninformed of the execution of the instrument conveying title to or an interest in the community property and that she did not consent to or acquiesce in its execution. In other words, she must be able to avoid the working of the doctrine of estoppel. This is expressly recognized in *Rice* v. *McCarthy, supra,* where the decision was that the trial court had erred in failing to find upon the facts claimed by the innocent purchaser to have raised an estoppel against the wife who sought to avoid her husband's sole contract for sale of

the community real property. ▉ But in the instant case the trial court has specifically found that the wife "did not at the time of making said sale of said contract know of the same, nor did she ever consent thereto or approve the same". By this finding, which we must assume is not lacking in evidentiary support, the possibility of an estoppel being claimed against the wife is removed and the court rightly concluded that the wife was not estopped from questioning the validity of the sale of the contract. Inasmuch, therefore, as we are of the opinion that the presumption of validity established by the proviso of section 172a of the Civil Code, is a disputable presumption, it necessarily follows that we entertain the view that the trial court's conclusion that the presumption of validity is conclusive against appellant was incorrect.

▉ In view of the determination thus reached, it is apparent that the judgment in favor of respondents should be reversed. Since the findings as herein noted successfully negative the existence of facts that would constitute an estoppel against appellant, and it further appears from the findings that the action was instituted within a period of one year from the date of the assignment by the respondent William Mark to respondents Siegrist, no good reason appears why judgment should not be directed to be entered in accordance with the prayer of appellant's complaint. The prayer of the complaint seeks cancellation of the transfer by respondent William Mark to respondents Siegrist and that the property which was the subject of the transfer be declared to be community property of appellant and respondent William Mark. The ultimate effect of a decree setting aside the transfer by the respondent William Mark to respondents Siegrist will be to restore the property to the status that it occupied prior to the transfer, i. e., community property of appellant and her husband, William Mark. The effect cannot be to vest title to the property in appellant. Since the property was community property, the interest of appellant therein was a mere expectancy, possessing none of the attributes of an estate either at law or in equity. (*Stewart* v. *Stewart,* 199 Cal. 318, 335 [249 Pac. 197] ; *McKay* v. *Lauriston, supra.*) The conveyance by appellant's husband, respondent William Mark, was not, under the decisions, a void conveyance, but a valid transfer, subject only to the right in appellant to institute, seasonably, in equity, an action to revoke the transfer

and reinstate the property as community property with the title vested in the husband. (*Lahaney* v. *Lahaney*, 208 Cal. 323 [281 Pac. 67].) But equity in its zeal to protect the inchoate expectancy of the wife against injurious invasion on her husband's part is not blind to the obvious equity that exists in favor of innocent purchasers in good faith from the husband without knowledge of the marriage relation. If an unconditional decree is rendered herein in conformity with the prayer of appellant's complaint restoring the property to the status of community property, the necessary effect will be to restore to the husband, respondent William Mark, the legal title to the property at the expense of those who have been deceived by his false representation that he was unmarried. The opportunity is thus afforded to him to deal again with the property as though it were his sole and separate property and to mulct other innocent purchasers who may be induced to part with money on the faith of his representation that he is unmarried. That a court of equity should lend its aid to the production of such a result is incredible, but the difficulty of protecting the expectancy of the innocent wife and at the same time of safeguarding the rights of innocent purchasers is apparent. The trial court has found that the money received by the husband was retained by him for his own use and benefit and that no part of it entered into the community of appellant and her husband, William Mark. As to that part of the court's finding that the husband retained the whole of the money received by him from the sale of the property for his own use and benefit, it must be assumed that it has evidentiary support and its correctness may not therefore be questioned. ■ It is, however, doubtful whether the remainder of the finding, declaring that no part of the proceeds of the sale entered into the community of appellant and her husband, is in reality a finding of fact. Sections 162 and 163 of the Civil Code, define the separate property of wife and husband, respectively, as property which either spouse owned before marriage or which was afterward acquired by gift, bequest, devise or descent. Section 164 of the Civil Code declares that all other property acquired after marriage by either spouse or by both is community property. The court's findings leave no doubt that the property which was the subject of transfer by the husband was community property. The proceeds of

the sale of this property must have been of the same character. A conclusion that, because the husband retained for his own use money received by him from the sale of community property, therefore, the money thus received did not enter into the community property of the spouses is not warranted. The fact that the wife derived no benefit from the transaction and that the husband expended the whole of the proceeds for his own sole benefit did not change the complexion of the property. Its character was not altered because the husband, instead of conserving the money, used it for his own purposes. That portion of the finding wherein the court found that no part of the proceeds of the sale by the husband "entered into the community" would seem, therefore, not to be a finding of fact but a legal conclusion which the court drew from the fact that the husband retained the proceeds for his own use and, as suggested, the conclusion was incorrect. Since the proceeds of the sale were community property and did enter into the community estate of appellant and her husband, it is apparent that the community estate, having once profited through the husband's act in selling the property without the wife's knowledge and consent, will again profit if the property is unconditionally restored to its former status, and that it will profit at the expense of innocent purchasers. Appellant has sought the aid of equity to protect her expectancy. She is an actor appealing for equitable relief. The relief sought is only indirectly for her benefit. It is directly for the benefit of an estate in which she has an expectancy. The effect of unconditionally granting the relief sought by appellant will be to work a manifest injustice upon innocent persons who possess equitable rights growing out of the subject in controversy. The situation thus presented warrants the application of the equitable maxim that he who seeks equity must do equity. If, therefore, appellant's prayer is to be granted and the property restored to its former status of community property, it should be accomplished only upon condition that the innocent purchasers shall be restored to the position which they occupied when, without knowledge of the marriage relation, and relying upon the husband's representation that he was unmarried, they parted with their money in return for his sole transfer. The trial court has found that

the amount paid by the innocent purchasers, respondents Siegrist, was $2,076.88, and that it was paid on December 1, 1926.

The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.