[Civ. No. 2762.   Fourth Dist.   July 10, 1941.]

GWENDOLEN MacKAY, Appellant, v. MILTON S. DARUSMONT et al., Respondents.

22

Loewenthal & Elias for Appellant.

Arch H. Vernon, Earl E. Johnson and Gilbert E. Harris for Respondents.

BARNARD, P. J.—This is an action to set aside a deed on the ground that it conveyed community real property and that the wife had not joined therein. From a judgment in favor of the defendants the plaintiff has appealed.

There is no dispute as to the material facts. The appellant was employed by Doctor T. A. MacKay in his dental office for some eighteen months prior to February 20, 1937. On that date they went through a marriage ceremony in Yuma, Arizona. MacKay's former wife had obtained an interlocutory decree of divorce in the Superior Court of Los Angeles County on February 19, 1936. A final decree in that action was not entered until February 23, 1937. On April 20, 1939, after an answer had been filed in this action

raising the question as to whether this appellant was legally married to MacKay, another final decree was entered in the divorce action *nunc pro tunc* as of February 20, 1937.

On April 24, 1937, an escrow was opened with a bank by MacKay as buyer and one Nelson as seller, through which MacKay purchased the property here in question. MacKay's instructions provided that the money he placed in escrow was to be used provided a policy of title insurance was procured showing title vested in him, a married man, as his separate property. The appellant placed in this escrow a quitclaim deed to this property which she had signed under date of April 24, 1937, and acknowledged May 1, 1937, which quitclaimed the property to ''Tim Adolph MacKay, a married man, as his separate property.'' She also handed the escrow bank a letter dated April 24, 1937, in which she stated: ''I herewith hand you a quitclaim deed executed by Gwendolen MacKay to Tim Adolph MacKay, a married man, as his separate property describing (here follows description of property) which you are authorized to use upon the order of Tim Adolph MacKay without collection for my account, as I have received full consideration therefor outside of escrow.'' In closing this escrow this quitclaim deed and a deed from the Nelsons conveying the property to ''Tim Adolph MacKay as his separate property'' were recorded on May 13, 1937. It appears, without conflict, that the full consideration for this lot, $5787.50, was paid in cash out of funds belonging to MacKay as his separate property.

On June 22, 1937, MacKay borrowed $7000 from the respondent bank, securing the loan by a deed of trust on this property, in the execution of which the appellant did not join. The proceeds of this loan were used to build a combined dental office and residence upon the lot. MacKay and the appellant moved into the building on October 20, 1937, and lived there until May 11, 1938, when they surrendered possession to the respondents Darusmont.

The respondents Darusmont, who had not previously known the MacKays, purchased the property through a real estate agent with whom MacKay had placed it for sale, paying $20,000 for it, a part of this being obtained through a new loan made by the respondent bank after cancellation of the prior trust deed given to this bank by MacKay. The negotiations for the sale to Darusmont which began in February,

1938, were delayed some weeks while a change in zoning regulations was obtained. The escrow in this connection was closed on April 23, 1938, and about six months later MacKay deserted the appellant. Thereafter, and within a year from the conveyance of the property to the respondents Darusmont, this action was brought.

The appellant testified that she talked to MacKay about the purchase of this lot and the manner in which it was to be paid for before he bought it and that she knew that it was to be paid for with his separate funds. With respect to the sale of the property to the respondents Darusmont she testified that she had talked to MacKay about selling the property; that MacKay said he wanted to give up his practice and get away; that MacKay then talked to the real estate man in her presence, saying "my price is going to be Twenty Thousand"; that respondents Darusmont then came to the property and she was introduced to them as the wife of MacKay; that she showed them over the building; that she talked to them a number of times before the deal was closed; that she did not ask any questions or say anything to them about the payment of the consideration; and that after the deal was closed "I had to get myself organized and get out of the house so they could take possession on the 15th of May, 1938."

While this property was originally purchased with separate funds belonging to MacKay appellant's contention that it was transmuted into community property is based upon evidence of certain oral statements claimed to have been made by MacKay. The appellant testified in this connection that MacKay had promised to build a home "on the Palisades" and that she need not work after their marriage; that shortly after their marriage MacKay took her to see the lot in question and told her that if she continued to work in his office and give up the idea of building a home on the Palisades "he would build very lovely new offices, including a residence"; that she asked MacKay how they could build this building if they could not build a home; that he replied that he would use his money to buy the lot and that "I will throw it into the jack pot providing you will work with me and we will work together. You will continue with the office. We will work together, clean up the debts which we will have to borrow from the bank; and if you will do that with me, then we will have this debt cleaned up very quickly"; and that she agreed to do this and thereafter worked in the office when she

was able. There was also evidence that on several occasions while they were living on the property MacKay had spoken of it to others as being the property of himself and the appellant.

With respect to the merits of the appeal the appellant argues that it conclusively appears that this was community property; that her quitclaim deed passed only such interest in the property as she possessed at the time of its execution but not the interest she later acquired when the escrow was closed and the property was acquired by MacKay; that he then acquired it as community property, although the record title was in his name; and that the respondents Darusmont could not be *bona fide* purchasers because they knew she was Mac-Kay's wife and, under section 172a of the Civil Code, there is no presumption of the validity of a deed given under such circumstances.

■ We think it does not conclusively, or at all, appear that this property became the community property of Mac-Kay and the appellant. Without question it was purchased by separate funds. MacKay's statement that he would put his money into the jack pot providing the appellant would work with him and that they would work together and soon pay off the money borrowed to erect the building, with his subsequent statements to others to the effect that he and his wife owned the property, constitutes rather weak evidence of an agreement to transmute separate property into community property. He did not do any such thing but in his escrow instructions provided that his money was to be used to secure a conveyance of the lot to him as his separate property. The appellant had full knowledge of this and acquiesced by putting her quitclaim deed into the escrow with instructions that it was to be used at MacKay's order without collection for her, and with the statement that she had received full consideration outside of the escrow. With her knowledge and consent and active participation, the record title of the lot was placed in the name of MacKay as his separate property. She placed her quitclaim deed in escrow and permitted it to be used in connection with the acquisition of this lot by MacKay for the very purpose of enabling him to acquire it as separate property. None of the papers in the escrow were to be used until the escrow was closed in accordance with the instructions, which were to the effect that the property was to be conveyed

to MacKay as his separate property. The effective date of the papers was when they were recorded and the quitclaim deed was placed in escrow with the intention that it should apply to and be used in connection with the acquisition of this very property as the separate property of MacKay. MacKay had no interest in the property until the escrow was closed and, whatever the appellant's interest in the property was, it was then conveyed by her to MacKay with the specific provision that it was to be his separate property. The appellant had no after-acquired interest in this property, community or otherwise, which survived the delivery and use of this quitclaim deed.

■ Section 172a of the Civil Code provides that none of its provisions shall be construed to apply to a conveyance between husband and wife. It must have been intended thereby to permit a wife to convey her interest in property to her husband whether that interest was community or otherwise. Section 172a was apparently designed to protect a wife's community interest where property stands in the name of her husband. We may assume that it would apply to property which is actually community property but which has been placed of record in the husband's name as his separate property without the wife's knowledge or consent. It would be unreasonable to hold, however, that it was intended to apply to property taken in the name of the husband as his separate property not only with his wife's knowledge and consent but by her active participation and, in fact, through a conveyance from her to her husband which she has signed, acknowledged and delivered for the very purpose of creating a record title in him as his separate property. ■ Regardless of any presumption provided for in section 172a a wife, in order to set aside a conveyance to another and recover such property, must establish that it was community property and the general circumstances must be such as do not affirmatively show that she is estopped from attacking the transfer. (*Mark* v. *Title Guarantee etc. Co.*, 122 Cal. App. 301 [9 Pac. (2d) 839].) ■ Section 172a was never intended to serve as a weapon by which a wife may defraud an innocent buyer after having herself misled him. While the appellant is appealing to a court of equity she does not come in with clean hands. While she alleged in her complaint that the conveyance was made without her knowledge or consent, the undisputed evidence indicates the contrary. She enabled and caused the

record title of this property to be placed in the name of Mac-Kay as his separate property, she knew all about the sale to the respondents Darusmont, knew the consideration they were paying to her husband, talked with them on several occasions but did not tell them of her claim to a community interest, and when the deal was finally closed she surrendered possession to them without a word, and it was not until after her husband deserted her that this claim was raised. Under the circumstances here appearing it must be held that this lot never became the community property of MacKay and this appellant, and that she is now estopped from attacking the record title relied upon by the respondents and which she was instrumental in creating. ▇ While estoppel was not pleaded in express terms the facts constituting an estoppel were pleaded. Under the circumstances here appearing this is sufficient. (*Burrow* v. *Carley,* 210 Cal. 95 [290 Pac. 577] ; *Johnson* v. *Schimpf,* 197 Cal. 43 [239 Pac. 401].)

▇ The appellant further contends that the court failed to make findings on material issues, that the judgment is not supported by the findings as made, and that the findings are not supported by the evidence. It is argued that the court did not find whether or not this was community property, that since the court did not find that the respondents Darusmont purchased the land without knowledge that the appellant was the wife of McKay the judgment cannot be supported, and that under section 172a of the Civil Code a number of the findings that were made are immaterial. The court found that MacKay and the appellant were husband and wife; that MacKay acquired the property from the Nelsons at the close of the escrow on May 13, 1937; that the appellant executed and delivered to MacKay a quitclaim deed covering the property; that MacKay conveyed the property to the respondents Darusmont for a good and valuable consideration; that in the meantime the property had stood in the name of MacKay as his separate property at all times; and that the respondents Darusmont acquired said property from MacKay without notice of the community interest, if any, of the appellant and in reliance upon her quitclaim deed. The court also found that the appellant received no consideration for the execution of her quitclaim deed, and that as between herself and MacKay this deed did not divest her of any interest she had in the property. Doubtless this finding was made in an

effort to protect the appellant in any controversy she might have with MacKay, but it in no way detracts from the other findings which are material here as between the appellant and these respondents. ■ It is argued that the finding that in purchasing this property the respondents Darusmont relied upon the appellant's quitclaim deed is not supported by the evidence. While Mr. Darusmont testified that he had not seen this deed and knew nothing of it, he also testified that he purchased the property through an escrow and relied upon the record title as reported by the title company. This finding is sufficiently sustained for the purpose of this action. The material findings are supported by the evidence and the findings, as made, are sufficient to support the judgment. Under the circumstances, it would serve no useful purpose to consider in detail all the technical points raised by the appellant or to go into the question as to whether the appellant was ever legally married to MacKay.

The judgment is affirmed.

Marks, J., and Kelly, J., *pro tem.*, concurred.