[Civ. No. 30220. Fourth Dist., Div. Three. Dec. 15, 1983.]

LILLIE MAE BYRD, Cross-complainant and Respondent, v.
JEWELL BLANTON et al., Cross-defendants and Appellants.

988

COUNSEL

Howard Moore, Jr., Darryl Parker and Joanne Morrison for Cross-defendants and Appellants.

Rutan & Tucker, Theodore I. Wallace, Jr., and William T. Eliopoulos for Cross-complainant and Respondent.

OPINION

**SONENSHINE, J.**—Jewell Blanton, claiming a community property interest in property in the name of her mother-in-law, Lillie Mae Byrd, filed a complaint alleging constructive fraud and civil conspiracy and asking the court to quiet title and to restore it to her. Byrd cross-complained for forcible detainer, possession of the premises (ejectment) and money damages. The summary proceeding was heard first and the court found against Byrd on the action for forcible detainer but granted judgment for ejectment. The damage award of $9,350 was stayed pending resolution of Jewell's complaint.

Jewell appeals, arguing the court erred in finding the statute of limitations contained in Civil Code section 5127[1] barred an assertion of her community property interest in the real property.

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

## FACTS

In 1960, Byrd and her son Joseph Blanton purchased a residence in Laguna Beach, California. Each contributed to the down payment, but title was taken in Joseph's name alone.[2] They resided in the property together and each made payments toward the mortgage until 1964 when Joseph married Jewell and he and his bride moved to New York. Byrd continued living in the property and made the payments from 1964 to 1968[3] when Joseph and Jewell returned to California and took up residence with Byrd. Payments on the mortgage (including several refinances) were thereafter made by the Blantons.

In March of 1978 Joseph executed a deed changing title from his name alone to joint tenancy with his mother who recorded the deed. Joseph succumbed to cancer in May and died intestate. In June, Jewell retained a lawyer who failed to file an action to recover the community property interest. She then hired other counsel who filed the present action from which this cross-complaint was severed.

The court did not make a finding as to the exact amount of the community interest in the property but did conclude, "it would appear to the court that those payments during the marriage would have created some kind of a community property interest in the property."[4] The court, applying the one year limitation period of section 5127, refused to allow Jewell to assert this interest as a defense to the ejectment action.

## DISCUSSION

Is the statute of limitations contained in section 5127[5] applicable to this transaction?

---

[2]Byrd testified she feared responsibility for her estranged husband and was afraid to be put on title.

[3]Joseph sent Byrd $50 a month and there may have been rental income. The court did not make findings on the exact amount of the contributions and as this is not relevant to the issues on appeal we decline to determine the exact amount of the contributions.

[4]In support of this conclusion the court correctly relied on *In re Marriage of Moore* (1980) 28 Cal.3d 366 [168 Cal.Rptr. 662, 618 P.2d 208] and its progeny.

[5]Section 5127 reads in pertinent part: "Except as provided in Sections 5113.5 and 5128, either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; provided, however, that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; provided, also, however, that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real

▮ Examination of the applicable authorities, including section 172a,[6] a logical construction of section 5127 and public policy underlying the family law statutes dictate our conclusion: The one-year statute of limitations contained in section 5127 is not a bar when as here the transfer takes place without the knowledge or consent of the nonsigning spouse and the transferee has knowledge of the marital relationship.[7] Any other interpretation would place bad faith and bona fide transferees on the same footing.

Jewell urges the one-year statute of limitations applies only to *lessees, purchasers or encumbrancers in good faith without knowledge of the marriage relation,* and because Byrd had knowledge of the marriage relation

---

property, to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed prior to January 1, 1975, and that the sole lease, contract, mortgage, or deed of either spouse, holding the record title to community real property to a lessee, purchaser, or encumbrancer, in good faith without knowledge of the marriage relation, shall be presumed to be valid if executed on or after January 1, 1975. No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of either spouse alone, executed by the spouse alone, shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate, and no action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, which was executed by the husband alone and filed for record prior to the time this act takes effect, in the recorder's office in the county in which the land is situate, shall be commenced after the expiration of one year from the date on which this act takes effect.''

[6]Civil Code section 172a, enacted in 1917, provided: "The husband has the management and control of the community real property but the wife must join with him in executing any instrument, by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; *provided, however,* that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid; but no action to avoid such instrument shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.''

In 1925, 172a was amended adding a clause dealing with interspousal transfers and inserting "also" between the existent "provided" and "however."

In 1927, 172a read: "The husband has the management and control of the community real property, but the wife, either personally or by duly authorized agent, must join with him in executing any instrument, by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered; *provided, however,* that nothing herein contained shall be construed to apply to a lease, mortgage, conveyance, or transfer of real property or of any interest in real property between husband and wife; *provided, also, however,* that the sole lease, contract, mortgage or deed of the husband, holding the record title to community real property, to a lessee, purchaser or encumbrancer, in good faith without knowledge of the marriage relation shall be presumed to be valid. No action to avoid any instrument mentioned in this section, affecting any property standing of record in the name of the husband alone, executed by the husband alone, shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate . . . .''

[7]We do not reach the issue of a bad faith donee transfer to a bona fide purchaser. See *Mark* v. *Title Guarantee & Trust Co.* (1932) 122 Cal.App. 301 [9 P.2d 839] (requiring wife to restore innocent purchasers to their original position).

and was a donee,[8] the statute is inapplicable to this transaction. Byrd simply relies on the language of the statute, citing *Strong* v. *Strong* (1943) 22 Cal.2d 540 [140 P.2d 386] and *Horton* v. *Horton* (1953) 115 Cal.App.2d 360 [116 P.2d 605]. However, the latter authorities are distinguishable either on their facts or in light of the code sections applicable at the time they were decided.

In *Strong*, husband acquired title to property in 1925. He later married and community property funds were used to make the mortgage payments. In 1932, a grant deed signed by both husband and wife was recorded changing title to husband's mother. In 1938 the parties divorced, wife was awarded the home and husband's mother brought a quiet title action against wife. The trial court awarded the property to wife. The Supreme Court reversed in an opinion by Justice Traynor, finding: "the wife adequately signified her consent to the transfer by the husband by signing the deed . . . . [¶] The purpose of section 172a was to give a wife a veto power over conveyances of community property disadvantageous to her (*Stewart* v. *Stewart, supra* [199 Cal. 318 (249 P. 197)]) and since she can exercise this power effectively by refusing to sign the deed, there is no need for more elaborate procedure." (*Strong* v. *Strong, supra,* 22 Cal.2d 540, 543-544.) The opinion continues: "Defendant, moreover, asserts her rights under section 172a too late. At the time the property was acquired this section provided that no action to avoid a conveyance of community real property in which the wife had not joined 'shall be commenced after the expiration of one year from the filing for record of such instrument in the recorder's office in the county in which the land is situate.' (Stats. 1917, p. 829.)" (*Id.,* at p. 544.)

The *Strong* decision may appear to foreclose Jewell's assertion of her community interest, but the facts are so different in the instant case that we do not feel bound by the statute of limitations discussion. Jewell did not know of the transfer, did not execute or consent to it, and there can be no argument of detrimental reliance by Byrd who knew of the marriage relation and Jewell's lack of consent. Additionally, section 172a at the time *Strong* was written gave husband management and control of the community property and wife had no present and equal interest.

The husband in *Horton* gifted property to his brother without the knowledge or signature of wife. Husband retained a life estate, testifying he executed the deeds to save probate costs. Following his brother's death, he and wife brought an action to quiet title. The principal issue urged by defendants was wife's lack of legal title, claiming she had no standing to attack the deeds in a quiet title action. They conceded she had a right to bring an

---

[8] At least as to the Blantons' community interest in the property.

action to avoid the deeds but did not exercise it. The court disregarded this contention and affirmed the lower court's judgment quieting title in plaintiffs. The one year limitation was discussed although it did not apply as the deeds were not recorded until trial.

In *Horton,* husband and wife sought avoidance of the deed and return of the entire property. Jewell seeks only to invalidate the deed as to her share of the community property interest. Most importantly, in *Horton* there is no mention of the brother's knowledge of any community property interest belonging to the nonsigning spouse as, again, the case was decided in light of husband having sole management and control of the community property.

The purpose of the limitation contained in section 5127 is to protect "third parties who might rely on the recorded instruments." (*Schindler* v. *Schindler* (1954) 126 Cal.App.2d 597, 604 [272 P.2d 566].) ■ Statutes of limitation "are designed to promote justice by preventing the revival of hoary claims that have been *allowed* to slumber until evidence has been lost, memories have faded and witnesses have disappeared." (*Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 718 [106 Cal.Rptr. 21, 505 P.2d 213], italics added.) This places "an opposing party on notice within a reasonable time that a claim is pending against him . . . ." (*Id.,* at p. 718.) These statutes were enacted to *prevent* fraud, not to provide a protective shield for its perpetration.

To extend the shortened limitation period to all gift conveyances executed by the spouse holding record title would be patently unfair. A spouse could conspire with a donee, convey community property standing of record in the spouse's name and quietly await the passage of one year before the donee asserts ownership. We find it unlikely the Legislature intended to provide a nonsignatory spouse merely with the protection of an annual perusal of the county recorder's files for a possible transfer by the record holding spouse. "[A] construction that would create a wholly unreasonable effect or an absurd result should not be given." (*Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762 at p. 766 [195 Cal.Rptr. 417].)

■ Lastly, we must construe the application of the limitation section of 5127 "with reference to the whole body of law of which it is a part so as all may be harmonized and have effect." (*Barnes* v. *Chamberlain, supra,* 147 Cal.App.3d 762, 767.) Throughout the evolution of our present day family law statutes, the trend has been toward achieving greater equality between spouses. Wife was given a "present, existing, and equal" interest in community property by the adoption of section 161a in 1927 and, in 1975, was granted equal management and control. There can no longer be the inference of dominion by husband prevalent in the era of *Strong* and

*Horton.* While property standing of record in one spouse's name *appears* validly alienable by that spouse alone, section 5127 *requires* the other spouse's signature. The one year limitation period only protects bona fide transferees with no knowledge of the marriage relation who have no reason to suspect another signature is necessary.

We find the limitation in section 5127 is not a bar to Jewell's community property claim. The property stood in the name of her husband alone and was conveyed by him alone without her knowledge or consent to a donee who knew of the marriage relation and the nonsigning spouse's lack of knowledge or consent.

The judgment for possession of the premises (ejectment) and damages is reversed. Jewell to recover her costs on appeal.

Crosby, Acting P. J., and Wallin, J., concurred.

A petition for a rehearing was denied on January 6, 1984, and the following opinion was then rendered:

**SONENSHINE, J.**—Respondent on petition for rehearing contends this court misinterpreted the law applicable in *Strong* v. *Strong* (1943) 22 Cal.2d 540 [140 P.2d 386] by stating, on page 991, *ante,* "wife had no present and equal interest" in the community property. However, respondent fails to note the property in *Strong* was conveyed to husband prior to the adoption of Civil Code section 161a. ■ "The rights of the husband and wife must be measured by the statutes in effect when the property was acquired . . . ." (Id., at p. 543.) The wife in *Strong* had no present and equal interest in the community property before the court.

Respondent's petition for a hearing by the Supreme Court was denied March 14, 1984. Mosk, J., was of the opinion that the petition should be granted.