Filed 7/21/16  Medellin v. One West Bank CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARIA DEL CARMEN MEDELLIN et al., | B263215 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC505660) |
| v. | |
| ONE WEST BANK, FSB, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzanne G. Bruguera and Elizabeth R. Feffer, Judges.  Affirmed.

Law Offices of Robert A. Brown, Robert A. Brown, for Plaintiffs and Appellants.

Wright Finlay & Zak, Jonathan D. Fink and Jennifer A. Brady, for Defendant and Respondent.

_____

Maria Del Carmen Medellin and Ramon Lua appeal from a summary judgment in favor of One West Bank, FSB. Appellants, a married couple, challenge the foreclosure proceedings against their family home in Fontana on several grounds, all of which are premised on the theory that the deed of trust is invalid because it was not signed by both spouses. We find no triable issue of material fact and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In 2007, Lua purchased the real property at issue with a $350,000 loan from IndyMac Bank, FSB, and secured the loan with a deed of trust on the property. The property was deeded to Lua as "A Married Man as his Sole and Separate Property." That also is how he was identified on the deed of trust, which he alone signed. An interspousal transfer deed purporting to bear Medellin's signature transferred her interest in the property to Lua as of September 10, 2007. The deed of trust and the interspousal transfer deed were witnessed by the same notary public on August 10, 2007. The grant deed from the sellers, dated August 20, 2007, was notarized on August 29, 2007. All documents were recorded on September 13, 2007.

The deed of trust was later assigned to respondent. After Lua defaulted on the loan, notices of default and sale were recorded in 2009. In 2010, Lua received a loan modification from IndyMac Mortgage Services, a division of respondent, and the notice of default was rescinded. He defaulted once again, and a new notice of default was recorded in August 2012, followed by a notice of sale in December of the same year. On all these documents, the property was identified as Lua's separate property.

In August 2013, appellants sued to quiet title to the property, asserting several related claims based on the absence of Medellin's signature from loan documents.[1] The

---

[1] Also in 2013, Lua filed for bankruptcy.

2

trial court granted summary judgment to respondent and dismissed the case in January 2015.[2]  This appeal followed.

## DISCUSSION

Summary judgment is properly granted if there is no triable issue of material fact, and the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  We review the trial court's ruling on a motion for summary judgment de novo, viewing the evidence in the light most favorable to the opposing party.  (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.)

Appellants seek to quiet title to the property on the theory that the deed of trust is void under Family Code section 1102[3] because Medellin did not sign it.  Section 1102, subdivision (a) provides that "both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which . . . community real property or any interest therein is . . . sold, conveyed, or encumbered."  Unauthorized gifts, conveyances or encumbrances of community property are not void, but they are voidable at the election of the nonconsenting spouse.  (*Clar v. Cacciola* (1987) 193 Cal.App.3d 1032, 1036.)

Section 1102, subdivision (d) provides that no action "to avoid an instrument mentioned in this section, affecting any property standing of record in the name of either spouse alone, executed by the spouse alone," shall be commenced more than one year after the instrument is recorded with the county recorder.  Respondent notes in passing that the trial court incorrectly rejected its one-year statute of limitation defense.  The court relied on the general rule that "no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property," citing *Ankoanda v. Walker-Smith* (1996) 44 Cal.App.4th 610, 615 and *Muktarian v. Barmby* (1965)

---

[2] Judge Elizabeth R. Feffer signed the judgment and order, which incorporated Judge Suzanne G. Bruguera's earlier written ruling on respondent's motion.

[3] Further undesignated statutory references are to the Family Code.

3

63 Cal.2d 558, 561. This general rule is not absolute. It applies in cases of undisturbed possession where the property owner lacks "any reasonable means of alerting" oneself to matters affecting the property. (See e.g. *Mayer v. L&B Real Estate* (2008) 43 Cal.4th 1231, 1238–1239 [owner's failure to pay regularly assessed property taxes ordinarily places owner on notice that tax sale might result, except where nonpayment is due to errors committed by tax assessor's office].) Alternatively, appellants rely on *Byrd v. Blanton* (1983) 149 Cal.App.3d 987 to argue that the statute of limitation in section 1102 "only protects bona fide transferees with no knowledge of the marriage relation who have no reason to suspect another signature is necessary." (*Id*. at p. 993 [statute of limitation did not bar widow's claim of community interest in property transferred to mother-in-law who knew of marriage relationship and wife's lack of knowledge and consent].) Because considerations relevant to the statute of limitation are tied to the merits of the complaint, we proceed to the merits.

Appellants assume the family home is community property. Indeed, property acquired during marriage generally is presumed to be community property (§ 760), but the spouses may, "through a transfer or an agreement, transmute—that is, change—the character of property from community to separate or from separate to community. (Fam. Code, § 850.)" (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400.) Here, the interspousal transfer deed purports to transmute the subject property into Lua's separate property. Appellants argue that no transmutation occurred because at the time that deed was signed Medellin held no interest in the property. Regardless of whether she did or not, under the doctrine of estoppel by deed, any after-acquired title passed to Lua when Medellin obtained it. (*Noronha v. Stewart* (1988) 199 Cal.App.3d 485, 489 ["[I]f a grantor purports to convey an interest in land which the grantor does not own, but afterwards acquires, the interest passes to the grantee at the time the grantor obtains it"].) Appellants argue estoppel by deed does not apply to transmutations, relying on a passage from *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 191–192 where the court concluded that the "*initial acquisition* of property from a third person" is not subject to transmutation. That portion of the decision was disapproved in *Marriage of*

4

*Valli*, at page 1405.

Appellants contend that Lua's separate property was transmuted into community property because community earnings were used to make mortgage payments, but there is no evidence in the record regarding the source of any such payments. Nor is appellants' contention based on law because the character of property cannot change without a written agreement. (*In re Marriage of Cross* (2001) 94 Cal.App.4th 1143, 1148.)

The character of property acquired on credit during the marriage "is determined by whether the lender intended to rely on separate or community property. [Citation.] Loan proceeds acquired during marriage are presumed to be community property. [Citation.] This presumption can be rebutted by showing the lender intended to rely on the spouse's separate property alone. [Citation.] Loan proceeds secured by separate property are also separate property. [Citation.]" (*In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1423.) In supplemental briefing, appellants argue there is no evidence to rebut the presumption that the loan proceeds were community property. However, all recorded documents indicate this was a purchase money loan secured by the real property itself.[4] The real property is consistently identified as Lua's separate property, suggesting the lender intended to rely on separate property alone in extending the loan. Appellants argue that neither respondent nor its predecessor is a bona fide encumbrancer "in good faith, without knowledge of the marriage relation." (§ 1102, subd. (c).) While the recorded documents identify Lua as "a married man," they also include the interspousal transfer deed granting the property to Lua as his separate property.

Appellants claim Medellin's signature on the interspousal transfer deed was forged, citing to her deposition testimony that she did not sign that deed.[5] Assuming

---

[4] "When an individual obtains a loan to purchase real property and uses the property as collateral, the transaction is called a purchase money loan." (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 673.)

[5] We requested the trial court's file and have considered the relevant portion of the deposition lodged with that court.

Medellin's signature on the interspousal transfer deed was forged, rendering the deed void *ab initio* (*La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 477), the question still remains whether she may avoid the entire loan transaction under section 1102. At most, the void interspousal transfer deed failed to validly transmute the character of the property into Lua's separate property. But the deed did not affect his title to the property and does not automatically render the entire loan transaction void *ab initio*. (See *id.* [law protects innocent purchasers and encumbrancers who obtain good legal title]; see also *Clar v. Cacciola*, *supra*, 193 Cal.App.3d at p. 1036 [encumbrances in violation of § 1102 are voidable, not void].) There is no indication respondent, or its predecessor, knew or had reason to know of any irregularity in the notarized interspousal transfer deed until this lawsuit.

The trial court agreed with respondent that Medellin ratified the loan transaction by accepting the benefits of the loan. Relying on *Estate of Stephens* (2002) 28 Cal.4th 665, appellants argue that under the equal dignities rule of Civil Code section 2310, Medellin could not have ratified the signature on the interspousal transfer deed, except in writing. (*Id.* at p. 673 ["just as an agent's authority to execute a deed must be in writing, so also must a principal's ratification of an invalid execution be in writing"].) However, respondent's contention is not that Medellin ratified the signature on the interspousal transfer deed; rather, it is that she ratified the loan, even though it was obtained without her signature on the loan documents.

Ratification of a promissory note need not be in writing, and ratification of one part of the loan transaction constitutes ratification of the entire transaction. (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 76.) Assuming, as appellants do, that the property was community property not validly transmuted into Lua's separate property, his obtaining of a purchase money loan on behalf of the community both benefitted the community by making possible the purchase of the family home and obligated it by encumbering that home. Medellin testified Lua "did everything" to buy a house for both of them, which she knew he could not afford to do without taking out a loan. She cannot accept the benefits of Lua's acts on behalf of the community without affirming those acts. (See

6

*Reusche v. California Pacific Title Ins.* Co. (1965) 231 Cal.App.2d 731, 737 ["[r]atification is the subsequent adoption by one claiming the benefits of an act, which without authority, another has voluntarily done while ostensibly acting as the agent of him who affirms the act and who had the power to confer authority"].)

Section 1102 is the latest of a series of statutes, initially aimed to "give a wife a veto power over conveyances of community property disadvantageous to her" (*Strong v. Strong* (1943) 22 Cal.2d 540, 544, citing former Civ. Code, § 172a) and then to protect "each spouse from the unauthorized acts of the other that may defeat the community interests in the real property." (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 37, citing former Civ. Code, § 5127.) Early on, the courts began to apply estoppel principles to prevent the use of the original statute "as a weapon." (*MacKay v. Darusmont* (1941) 46 Cal.App.2d 21, 26; see also *Bush v. Rogers* (1941) 42 Cal.App.2d 477, 480 ["a wife by her conduct may be estopped to attack the validity of an instrument because she did not join therein"]; *Rice v. McCarthy* (1925) 73 Cal.App. 655, 665 [public policy does not preclude application of estoppel principles].) To avoid the application of such principles, the wife had to show "that she was uninformed of the execution of the instrument conveying title to or an interest in the community property and that she did not consent to or acquiesce in its execution." (*Mark v. Title Guarantee & Trust Co.* (1932) 122 Cal.App. 301, 309.) More recent cases have similarly held that a community may be "'estoppel to deny liability due to the failure of one spouse to join a transaction when one spouse permits the other to conduct the transaction, both have a general knowledge of the transaction, and both are ready to accept the benefits which may come from it.' [Citation.]" (*In re Nelson* (9th Cir. 1985) 761 F.2d 1320, 1323, citing former Civ. Code, § 5127 and analogous Washington statute.) These authorities do not support limiting the application of estoppel and ratification principles to cases where the nonjoining spouse has consented to an encumbrance or conveyance in writing. (See *In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 753 [estoppel and ratification principles apply where wife accepted and retained benefits of agreement with constructive knowledge of her rights].)

7

Importantly, here there is no evidence that the loan transaction was disadvantageous to Medellin. To the contrary, without the loan, which made possible the purchase of the family home, she would have had no protectable interest in the property at all.[6] In her deposition, Medellin acknowledged she knew that loan statements came to the house every month, even though she did not look at them because Lua handled the loan payments. She also knew that in 2009 he did not have money to make loan payments. Clearly, Medellin was aware that the purchase of the family home had been financed with a loan, and she may be charged with constructive knowledge that the purchase money loan was secured by a deed of trust on the home, which might lead to foreclosure proceedings in case of default. That she may not have known the exact details of the loan transaction is not dispositive because she had a duty to investigate. (See *Reusche v. California Pacific Title Ins.* Co., *supra*, 231 Cal.App.2d at p. 737 ["where ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable man on inquiry [citation], he may be held to have ratified despite lack of full knowledge [citation]"].) Appellants are estopped from trying to invalidate the loan transaction under these circumstances.[7]

As a result, appellants' quiet title cause of action fails, as do their additional claims for slander of title, negligent and intentional interference in economic interest, violations of Civil Code sections 2923.5 and 2924.1, and punitive damages. All of these claims are

---

[6] We note that in some jurisdictions purchase money mortgages are excepted from the requirement that spouses must join in encumbrances. (See e.g. *Aetna Finance Co. v. Gaither* (1994) 118 N.M. 246, 249.)

[7] To the extent appellants assume that voiding the deed of trust would also cancel their obligation on the purchase money loan, they are incorrect. The antideficiency protection in Code of Civil Procedure section 580b applies only after the value of the collateral has been exhausted. (*Coker v. JPMorgan Chase Bank, N.A.*, *supra*, 62 Cal.4th at p. 681.) Invalidating the deed of trust would result in respondent's loss of its security interest in the home, but it would not "extinguish the underlying debt," which, if reduced to judgment, could give rise to a judgment lien against the community property. (*Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 70–73.)

premised on the flawed theory that neither the original loan, nor the loan modification or the notices of default and sale were valid because Medellin was not involved in the loan process, even though she acquiesced in and accepted the benefits of the loan transaction.

**DISPOSITION**

The judgment is affirmed.  Respondent is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                      EPSTEIN, P. J.

We concur:


WILLHITE, J.


COLLINS, J.